PROCTOR v. SOUTHERN RY.

1. CHARGE—DAMAGES.—In an action for damages for $1,995, where jury finds $740, it is not error of law, ·though not approved, for Judge in his charge to say that the damages were put at that sum to avoid removal to the United States Court, no reference thereto having been made in pleadings or proof.

2. IBID.—PLEADINGS—DAMAGES—NEGLIGENCE—COMPLAINT.—Under a complaint charging a defendant with doing an act "wilfully, wantonly and recklessly," "with intent to injure the plaintiff," it is error to instruct the jury that they may give damages arising from negligence. 22 Stat., 693, *construed.   Glover* v. *Ry. Co.,* 57 S. C., 228, and *Appleby* v. *Ry. Co.,* 60 S. C., 48, *distinguished from this.*

Before BENET, J., Greenwood, November, 1900. Reversed.

Action by John M. Proctor against Southern Railway Co. on the following complaint :

"John M. Proctor, the plaintiff above named, by Graydon & Giles, his attorneys, complaining of the Southern Railway Company, the defendant aforesaid, alleges :

"I. That the said defendant, the Southern Railway Company, is a corporation, duly chartered under and by virtue of the laws of the State of Virginia, and owns and operates a certain railroad between the cities of Greenville and Columbia, in this State, known as the Columbia and Greenville Railroad Company, together with the tracks, cars, locomotives, and other appurtenances thereunto belonging.

"II. That on the 13th day of September, 1899, while the plaintiff was returning from the city of Greenwood to his home in the county of Greenwood, in the State of South Carolina, and while traveling along the public road near the track of the defendant, driving two mules hitched to a two-horse wagon, at a point near the oil mill in the town of Ninety-Six, said county, the plaintiff observed an engine and a train of freight cars attached thereto, belonging to the defendant and operated by its agents, servants and em-

ployees, on the track of the defendant, and moving in the direction of the said town of Ninety-Six and toward the plaintiff, and about to meet the plaintiff's wagon and team.

"III. That the plaintiff, to avoid meeting the said engine and train of freight cars attached thereto, drove out of and off of the said public road and away from the track of the defendant, and stopped his said team to allow the said engine and train of freight cars attached thereto, to pass, the said plaintiff being then and at all times in plain and open view of the defendant, its agents, servants and employees; when the defendant, its agents, servants and employees, saw that the plaintiff had moved his wagon and team off from the public road and away from the noise of said engine and train of freight cars attached thereto, then the defendant, its agents, servants and employees, caused the said engine and train of freight cars attached thereto, to come to a full stop on the track of the defendant's road.

"IV. That the plaintiff, seeing that the said engine and train of freight cars attached thereto had come to a full stop, then drove his said wagon and team back into the said public road and attempted to pass the said engine and train of freight cars attached thereto while standing, but as soon as the plaintiff approached near and opposite to the said engine, he being in the said public road, the defendant, its agents, servants and employees, who were in charge of the said engine and train of freight cars attached thereto, and being in full and plain view of the plaintiff and his wagon and team, with intent to frighten and scare the plaintiff's team and injure the plaintiff, wilfully, wantonly and recklessly, and not regarding the rights of the plaintiff in that regard, let off steam from said engine, blew the whistle attached to said engine, so that the said team of mules became frightened and unmanageable, and were made to run away, and threw the plaintiff out of said wagon and the wheels of said wagon were made to pass over the body of the plaintiff, inflicting serious and painful wounds and bruises on plaintiff's back, foot and injuring the plaintiff internally, so that he became

ill and sick, and for a long time was unable to attend to his business, and was confined to his bed and suffered intense pain from the injuries to his left kidney, and he fears that from the effects of said injuries he will never be strong and well again.

"V. That by reason of the injuries as aforesaid, received by the wilful, wanton and negligent conduct of the defendant, its agents, servants and employees, the plaintiff has been damaged by the defendant in the sum of $1,995.

"Wherefore, the plaintiff demands judgment against the defendant in the sum of $1,995, and the cost of this action."

The trial Judge instructed the jury as follows:

"The case you have been trying and have now about reached the conclusion of is an action for damages brought by the plaintiff, Proctor, against the Southern Railway Company, for alleged injuries said to have been inflicted upon him by the railroad company or its servants. The allegations are of such a character as if established by testimony, by the preponderance of proof, would justify a jury in finding a verdict for damages, either actual damages or punitive, or both, or only actual or only punitive. It depends entirely on the testimony. The allegations are so framed that counsel had the right to introduce testimony as to actual damages and also evidence as to punitive, vindictive damages, and it is left entirely with the jury to say from the testimony whether the plaintiff has made out his case for damages of any kind or in any amount. You have heard counsel on both sides speak of actual and compensatory damages, and of punitive, vindictive or exemplary damages, and perhaps a word or two of explanation may help you so that you may the better weigh the testimony.

"When a man seeks only actual damages, called also compensatory damages, he seeks at the hands of the jury only enough money to place him where he was before, to pay him back, to compensate him for the actual injury; but when he seeks and obtains punitive damages as well as actual, the

jury in the case, if it is a proper case, are allowed in law, after having ascertained how much he ought to receive as compensation, to add another amount of money, not for the purpose of the compensation of the plaintiff, but for the purpose of inflicting a penalty upon the defendant for the wrong-doing proved—something in the nature of a punishment, very similar to a fine imposed in a criminal court for a violation of the law, and intended not only to punish for the wrong-doing in the past, but to act as a warning for the future not to repeat such wrong-doing.  Hence they are called punitive damages, the word 'punitive' meaning of the character of punishment.  They are also called vindictive damages, supposed to embody the righteous indignation of a jury at wanton, reckless, wilful wrong-doing, and they are also called exemplary damages, because they are supposed to operate as an example not only to the defendant who suffers the penalty, but to others in the same line of business who will take warning.

"Now, in this case, the plaintiff alleges that the injuries which he alleges in his complaint were inflicted upon him because of the wilful, wanton and reckless conduct of the railway company and its servants.  These allegations, if they are sustained by sufficient proof, by the preponderance of the testimony, would justify a jury in finding punitive damages, and also actual, if proved.  It is alleged here that the conduct spoken of as wilful, wanton and reckless, consisted in blowing the whistle of the engine and in letting off steam in a wilful, wanton and reckless manner, and, further, that those acts were done with the intent to frighten the plaintiff's team of mules, and also to injure him.  So that, under the allegations of this complaint, the plaintiff charges not only that the conduct was wilful, wanton and reckless, but with intent to frighten his mules and to injure him.  He alleges, further, in his complaint that as a consequence of that conduct on the part of the railroad servants, he suffered injury, that his team ran off, having been frightened by the blowing of the whistle and the letting off of steam in the

manner described, and that he suffered painful wounds and bruises in his back, and he also suffered internal injury which caused him to be ill and sick and unable to attend to business for a long time, and that he was confined to his bed and suffered intense pain from injuries to his left kidney, so that he will never be well and strong again; and for these alleged injuries he claims damages to the extent of $1,995—that otherwise odd sum being manifestly, of course, to come within the amount for which a suit of this character can be allowed in this Court and not removed to the Federal Court. If they had asked for more, for $2,000, probably the railroad company would have had a petition to remove it to the other Court; so that the amount alleged in the complaint may be explained in that way—$1,995 might have been $1,999.99, so far as that is concerned.

"The railway company, answering, denies that the plaintiff is entitled to any damages at all, denies all the allegations of the complaint; therefore, the burden of proof is put upon the plaintiff to establish his case according to the measure of proof, which is always applied in the Court of Common Pleas before a jury. In the Court of Common Pleas he is not required to prove it beyond a reasonable doubt, but by the preponderance of the testimony. So that you will take all the evidence that seems to favor, tends to favor or does favor, the plaintiff's claim on all these allegations, and put that evidence in one scale, and in the other scale over against it put all the evidence, no matter from what witness, that is against the plaintiff's claim, weigh the two batches of testimony, and if the testimony in favor of the plaintiff's claim clearly weighs more than the testimony against it, then the plaintiff's claim has been established by the preponderance of the testimony, which means the greater weight of the testimony, and I need not charge this intelligent jury that greater weight of the testimony cannot and should never mean the greater number of witnesses, because the testimony of one good, honest, truthful witness should in the opinion of an intelligent jury outweigh the testimony of a dozen or more

doubtful or untruthful witnesses; in other words, the question is: How much truth is there in the testimony? and if the jury finds more truth in the testimony of one man than in the testimony of twenty, then that man's testimony would outweigh the twenty who might be against him. You have heard all the testimony in the case. You are first to determine: how were the injuries inflicted? That is one of the main facts first to be ascertained. Did the plaintiff suffer any injuries? If so, what were they and to what extent has he been injured in his person? and are the injuries temporary, cured or curable, or permanent? If he has, according to the testimony, and that is your view of it, suffered injuries, then the next question is: Who is to blame? He charges that the railway company is to blame and should be made to pay him damages; in other words, he charges that the conduct of the railway company and its servants was the direct, proximate cause of the injuries he suffered. If that is your view of the case by the preponderance of the testimony, then if you are satisfied that the injuries were due directly to the wanton conduct of the railway company, or to the reckless conduct of the railway company, or to the negligence of the railway company, the plaintiff would be entitled to damages. If simply to the negligence, want of due care, of the railway company, he would be entitled to actual damages. If due to the wanton conduct, the wilful conduct, with intent to injure plaintiff, after some explanation on that point which I shall give you, he would be entitled to punitive damages.

"The plaintiff alleges that the blowing of the whistle and the letting off of steam was done recklessly. That means, done without care. Recklessly generally means gross negligence. It is a little stronger than carelessness in its usual application, but still an allegation of reckless conduct would justify a jury in finding that the conduct was ordinary negligence, want of due care, if the plaintiff failed to prove gross negligence, wanton, wilful misconduct—and what is meant by due care is simply that measure of caution and careful-

ness which was proper under the circumstances. That measure of care necessarily varies in the different cases, just because the circumstances developed in the different cases vary. A man who is driving a team of horses is expected by all people of intelligence and common sense to exercise due care, just that amount of care which he should exercise in proportion to the probable danger in driving a team of horses, and he is expected to exercise more care in driving that team of horses along the street of a town than out in the country. For obvious reasons the measure of care varies. So, also, the man who is driving or operating a locomotive and train, if there is more danger in working such machinery, from its weight and the speed with which it moves and the tremendous power which it takes, then common sense and intelligence would expect of him a greater degree of care, if there is greater danger in running a train than in driving a team of horses. So, also, more care is expected of an engineer or conductor running a train along the streets of a town where there are numerous traveled places than out in the country where they have no reason to expect the presence of any person, may be, for miles or any other obstruction in the way. You see, therefore, that the measure of care necessarily varies, and under the varying circumstances just this amount of care is necessary : that amount of care which would or should have been exercised by a person of ordinary intelligence and prudence. A jury can easily apply that in every case. In this case, therefore, you are to say what amount of care should have been exercised by the railway company's servants in operating the train on the day mentioned in the complaint at the place mentioned in the complaint, under the circumstances detailed in the testimony under the allegations of the complaint. So much for due care.

"'The plaintiff goes further and says that the conduct of the railway company's servants was wanton, wilful, showing an utter disregard of the rights of the plaintiff, and it was done with intent to frighten his team and to injure him.

Counsel for the defendant has submitted to the Court as matter of law that a principal cannot be held liable in punitive damages for the wrongful acts of his agent or servant, and cited authority from the Supreme Court at Washington in other cases, and, as a general proposition, that is good law.    The counsel for the railway company in this case submitted that as law, arguing that, as those cases argued, in the cases cited, a master should not be subjected to a penalty or a punishment for the wilful and wanton misconduct of his servant; he should be held liable in compensatory damages only, actual damages only.    But like all general statements, they are not always applicable, not applicable to all cases. What is good law in one case would not be good law in another case, and the opinion of the highest court in the land, while good as to that particular case, might not be good as to another case where the facts would not correspond sufficiently with the facts of the case before the court; because whether or not a master or principal should be held liable in punitive as well as actual damages for the wrongful act of his servant, would depend on whether or not the acts of the servant or agent were committed while he was conducting the business of his master or principal within the scope of his agency, actually operating within the limit of his agency as such servant of the master, and whether the principal or master had either expressly or impliedly authorized or ratified or adopted the acts of the servant, or whether the master or principal had been guilty of negligence in selecting or employing his servant or agent.    For example, if the railway company exercises due care in selecting and employing its servants to operate the train, and if those servants in operating the trains are guilty of personal acts of violence, for instance, upon a passenger, not in the line of the business as railroad servants but as individuals, why the railroad company would not be held responsible for such violent conduct on the part of the servants; but in conducting the business as servant they mistreated or maltreated a passenger, or are guilty of any wanton, wilful misconduct against

12—61

any person, passengers or other people, or against property, if doing that in the line of the business, conducting the work of the master, then the general principle laid down would not apply—because the railroad company is held to act through its servants. That is all that the public sees of a railway company, the servants who operate the trains. They stand to the public as the railway company, and if in the conduct of the business as the railway company's servants or employees, they are guilty of wilful, wanton, reckless misconduct towards the public, showing an utter disregard for the lives and property or rights of the public, then the railway company, being a quasi public servant, is held responsible in punitive damages. So, also, if the railway company could be shown in a proper case to have been reckless and careless in employing servants, placing incompetent, inexperienced and careless men in charge of dangerous machinery, like a locomotive, and if that incompetent, careless and reckless servant, who should not have been employed by the railway company, and who would not have been employed by the railway company if they had exercised proper care in selecting and employing a servant, is guilty of conduct which causes injury to the public because of his recklessness and incompetency, why then the railway company would in such a case be properly held liable in punitive damages, as well as in actual. As I have said, the railway company is a quasi public servant. It does not operate its railroad just as a private corporation operates its factory or its mills or any other business it may conduct. The railway company owes certain duties to the public. It does not run its road entirely for its own profit, but it is held bound to observe certain duties, and to discharge those duties to the public, and amongst them is that they should employ safe, competent servants who will run their trains with due care. So, also, it is very properly held that, while whistling, blowing the whistle and letting off steam, may be necessary, must be necessary, in operating a railroad, even if that, however, is done unnecessarily and wantonly and wilfully, for

the purpose of frightening horses or other cattle near the track, that is an infringement of the railway company's duties to the public, and if injury results therefrom, the railway is properly held liable in damages, either in actual or both actual and punitive, as the testimony in a proper case may justify.   It is for you to say in this case whether the plaintiff has proved by the preponderance of the evidence that he was injured in the manner alleged.   If he was, what was the extent of his injury?   If he was injured to a certain extent, whether the injuries are permanent or temporary or both?   If so, was the railway company to blame directly as the cause of that injury?   If so, you will find out whether he is to obtain actual damages only or actual and punitive. With my explanation of the law, I think you will be able to say from the testimony whether he is entitled to either or both.   If you come to the conclusion that he is entitled to damages, the amount is entirely in your power to assess, but it must be, of course, in accordance with the testimony. The amount claimed is $1,995.   You cannot go beyond that, no matter what the damages proved, nor can you go to that extent unless you are satisfied that the proof justifies that as an amount, but any amount less than that.   If you come to the conclusion that he is entitled to any damages, you will assess in accordance with the testimony.   If he is entitled to actual damages, you will first fix that amount.   Then also ask: Is he also entitled to punitive damages?   Was the conduct of the railway company wanton, wilful, with intent to injure, frighten the team and injure the plaintiff?   If you have not come to the conclusion, then you can only grant compensatory damages, actual not punitive.   If you are satisfied that the injuries were inflicted by the railway company and were due simply to a want of due care, then you will simply award actual damages and not punitive damages. If you come to the conclusion that the plaintiff is entitled to a verdict for damages in any amount, you will write the verdict out in words, and not in figures, and say: We find for the plaintiff so many dollars damages.   If the testimony

does not satisfy you that the plaintiff is clearly entitled to his damages by the preponderance of the testimony, then you will say: We find for the defendant.

"I am very glad to be able to congratulate you and the counsel, that this case has been argued without any reference at all to wealthy corporations, or any attempt being made to stir up any prejudice in the minds of the jury against railway corporations, which always seem to me an insult to the intelligence of the jury, and altogether apart from the evidence in the case. You are left as honest men in this case by the counsel in this cause to judge of these parties, the railway on the one side and the plaintiff, Proctor, on the other, as if they were two individuals, or two letters of the alphabet, 'A' against 'B,' and you are to decide from the testimony whether the plaintiff has made out his case, and award the damages if he has. If he has not, then you will find for the railway company. You will take the record and write your verdict on the back of the summons and complaint."

From judgment for plaintiff, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites: *Under the pleadings, the plaintiff should not have been allowed to recover upon proof of ordinary negligence:* 47 S. C., 30; 16 Ency., 1 ed., 392, 393, 394, 395; 28 N. E. R., 551; 34 N. E., 504; 7 Id., 808; 3 Elliott Ry., sec. 1175, 1251, 1254; 4 Id., 1642; 23 S. C., 531; Beach Cont. Neg., sec. 22; 28 N. E. R., 551; 18 A. & E. Ry. Ca., 192; Shearman on R. R. Neg., sec. 7; 79 Ala., 436; 86 Ala., 129; 101 Ala., 34; 92 Ala., 192; 93 Ala., 306; 9 So. R., 509; 18 S. W. R., 537; 14 N. E. R., 229; 13 So. R., 130.

*Messrs. Graydon & Giles,* contra, cite: *In view of verdict, reference of Judge to amount of damages claimed, removal to U. S. Court, &c., were harmless error:* 56 S. C., 576. *The allegations of the complaint are those of ordinary negligence, and hence instruction as to recovery on proof of neg-*

*ligence was proper:* 14 Ency. P. & P., 338, 334-5, and note 5; 57 S. C., 228; 60 S. C., 48.

July 17, 1901.　The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.　This was an action brought by the plaintiff to recover damages for injuries sustained by reason of the alleged wilful, wanton and reckless conduct of the servants and agents of the defendant company.　The allegations of the complaint, which should be fully set out by the Reporter in his report of the case, may be stated briefly as follows: that on the 13th day of September, 1899, the plaintiff while driving his wagon, drawn by two mules, along the public road, which ran very near the railroad track of the defendant company, seeing a freight train approaching, drove out of the public road and away from the defendant's track, for the purpose of allowing the said train to pass not so near plaintiff's wagon as it would have been if the plaintiff had remained in the public road, when the officers and agents in charge of said freight train stopped said train; that plaintiff seeing that the train had stopped, drove his wagon back into the public road, with a view to pass said train while it was stopped; but as soon as the plaintiff had approached near and opposite to the engine drawing the train, he being in the public road, those in charge of the train, being in full and plain view of the plaintiff and his wagon, with intent to frighten and scare plaintiff's mules and injure the plaintiff, wilfully, wantonly and recklessly, and not regarding the rights of the plaintiff, let off steam from the engine, blew the whistle, so that the mules became frightened and unmanageable, and were made to run away, whereby plaintiff was thrown from the wagon, which caused serious injuries to plaintiff, specified in the complaint.　The defendant answered, denying each and every allegation in the complaint.

The case came on for trial before his Honor Judge Benet, and a jury, and after the pleadings were read, his Honor,

as seems to be his custom, delivered a preliminary charge to
the jury, in which, as we understand it, he stated to the jury
fully and clearly the issues which they were called upon to
try, but, as we shall see presently, in his general charge, he
stated the issues differently, and as we think erroneously, in
one respect at least.   At the close of the testimony, and after
hearing the argument of counsel and the general charge of
the Circuit Judge, the case was submitted to the jury, who
found a verdict in favor of the plaintiff for the sum of $740,
and from the judgment entered on the said verdict (a motion
for a new trial having been made and refused) the defend-
ant appeals upon the several grounds set out in the record,
which need not be set out here, as it is claimed by counsel
for appellant in his argument here—justly, we think—that
the various grounds raise practically but two questions,
which are stated by counsel as follows : *First.* Did the Cir-
cuit Judge err in declaring to the jury that the plaintiff had
fixed the amount of his damages at $1,995, to avoid a re-
moval of the case to the Federal Court.   *Second.* Did the
Circuit Judge err in charging the jury that the plaintiff
might recover upon proof of ordinary negligence?

To better understand the first of these questions, it will be
necessary to state that the Circuit Judge, in his general
charge to the jury, after stating the nature and extent of
the injuries which the plaintiff, in his complaint, alleged
he had received, proceeded to use the following lan-
guage : "and for these alleged injuries he claims dam-
ages to the extent of $1,995—that otherwise odd
sum being manifestly, of course, to come within the amount
for which a suit of this character can be allowed in this
Court, and not removed to the Federal Court.   If they had
asked for more, for $2,000, probably the railroad company
would have had a petition to remove it to the other Court;
so that the amount alleged in the complaint may be explained
in that way."   Why such a matter should have been injected
into this case, we are utterly at a loss to conceive.   It was
wholly foreign to any issue which the jury were called upon

to try; it was not mentioned or alluded to in any way either in the pleadings or the testimony, and we do not see that it had any proper place in the case.    A plaintiff, who brings an action for damages, may fix the amount which he claims at any sum he pleases, and the only legal bearing or effect that it can possibly have is to forbid the jury from giving any more damages than the amount claimed in the complaint. What may have been the motives of the plaintiff in fixing the amount mentioned, is a matter solely for him, and is not, properly, to be inquired into by any one else.    While, therefore, we cannot approve of the practice of thus injecting into a case any matter which is wholly foreign to the issues joined in such case, the question to be determined by this Court is whether there was any *error of law* in thus incorporating into a charge to the jury matters wholly irrelevant to any issue in the case.    It is contended that such language was calculated to prejudice the minds of the jurors against the defendant; but while this may be the effect in some cases, yet in this case it seems pretty clear that no such effect was produced, for the amount found by the jury was but little more than one-third of the amount to which they had a right to go—provided, they thought the facts proved were sufficient to warrant such a finding.    This seems to negative the idea that the jury were prejudiced against the defendant by the language used by the Circuit Judge, in reference to the motive which probably influenced the plaintiff in fixing the amount of his damages at the sum stated in the complaint. We cannot say, therefore, that there was any *error of law* on the part of the Circuit Judge in using the language which is made the basis of the exception raising the first question.

The second question is of a much more serious character. In every system of pleading with which we are acquainted, not even excepting the liberal system of Code pleading, one fundamental rule has always been acknowledged, and that is, a plaintiff who brings an action for damages for an alleged wrong done to him must state the facts constituting such wrong in intelligible language, so that the

defendant may be able to understand what he is charged with having done, and thus enabled to meet the charge either with a denial or some satisfactory explanation. This rule is based upon common right and common sense; and while the system of Code pleading is designed to obviate the asperities of some of the artificial and technical rules of the former system of pleading, we do not understand that it was intended to abrogate any of the fundamental rules based upon common right. Hence, when a person is brought into Court, charged with having done certain acts which it is alleged caused wrong and injury to the plaintiff, he can not be called upon to answer for other acts of a different character which are not charged in the complaint. Even the recent act of 1898, 22 Stat., 693, entitled "An act to regulate the practice in the Courts of this State, in actions *ex delicto* for damages," was not designed to have, and cannot have, the effect of abrogating the rule above stated. For in the first section that statute simply declares that in such an action it is not necessary to make any *separate* statement of the facts which would entitle him to recover actual or exemptory damages, and he shall not be required "to elect whether he will go to trial for actual or other damages, but shall be entitled to submit his whole case to the jury under the instructions of the Court." And as is well said by Mr. Justice Pope, in *Glover* v. *Railway Company,* 57 S. C., at page 234, the object of that statute, or at least the first section of it, was to alter "the practice in this Stae in actions *ex delicto* for damages, and that since this act, so much of the case of *Spellman* v. *Railroad,* 35 S. C., 486, as indicated that the pleadings in our Courts in damage suits should point out whether punitive or actual damages were sought, and that the recovery in such suits should correspond to the issue thus raised, is no longer authority in this State." Indeed, the first section of the act of 1898 has no application to the case now under consideration, for that section applies only to the manner in which the claims for actual and exemplary damages should be made, and in this case no such question is pre-

sented.    The second section of the act of 1898 does, how-
ever, apply; and, as we think, so far from abrogating the
rule upon which we rely, does, in fact, recognize such rule,
by the language, which we italicize, in that section, which
reads as follows: "That in all cases where two or more acts
of negligence or other wrongs *are set forth in the complaint,*
as causing or contributing to the injury for which such suit
is brought, the party plaintiff in such suit shall not be re-
quired to state such several acts separately, nor shall such
party be required to elect upon which he will go to trial, but
shall be entitled to submit his whole case to the jury under
the instruction of the Court, and to recover such damages as
he has sustained, whether such damages arose from one or
another or all of such acts or wrongs *alleged in the com-
plaint.*"    It is manifest that this section does not authorize
a recovery for any act of wrong *not "alleged in the com-
plaint,"* but may recover for any act or wrong which *is
alleged in the complaint,* although such acts or wrongs may
not be separately stated.    It is clear that the object of this
section was to obviate the necessity of alleging acts of wrong
separately, and to relieve the plaintiff from being required
to elect, where one or more acts of wrong *are alleged in the
complaint,* upon which he would proceed to trial.    Now, in
this case, there is no allegation whatever that the plaintiff
was injured by the ordinary negligence (as the Circuit
Judge terms it in his charge) of the defendant, and no fact
is alleged which would tend to show *such* negligence.    On
the contrary, the allegation is that the defendant did the acts
complained of *"with intent* to frighten and scare the plain-
tiff's team and injure the plaintiff wilfully, wantonly and
recklessly, and not regarding the rights of the plaintiff in that
regard."    This, so far from being an allegation of the want
of due care on the part of the defendant, which would con-
stitute "ordinary negligence," is, on the contrary, an allega-
tion that the defendant *purposely*—not negligently—did the
acts complained of with intent to injure the plaintiff.    So
that the practical question presented is whether there was

error on the part of the Circuit Judge in instructing the jury that, even if they were not satisfied that the defendant did the acts complained of in the manner and with the intent alleged in the complaint, they still might find for the plaintiff, if they were satisfied that the injuries complained of were due "to the negligence, want of due care, of the railroad company." It seems to us clear that such an instruction would be erroneous; for it would be in effect, saying that, where a defendant is charged with one wrong, the jury may hold him liable if a wholly different wrong from that charged is proved against him—that if a person is charged with *wilful* and *intentional* wrong, and such charge is not sustained by the testimony, still he may be held liable if the jury are satisfied that he has committed an entirely different and distinct wrong with which he is *not charged*. In other words, that a person who is brought into Court to answer to one charge may be held liable under another and different charge for which he has not been called upon to answer. This, it seems to us, would be in direct violation of the fundamental rules of law, as well as of common justice and right, as well as in direct conflict with the analogies of the law afforded by the cases upon this very subject of negligence. For it is well settled that in an action to recover damages for injuries sustained by reason of the alleged negligence of a railroad company, the plaintiff will not be permitted to rely upon any act of negligence not alleged in the complaint—*Fell* v. *Railroad* Co., 33 S. C., 198; and the same doctrine is recognized in the comparatively recent case of *Spires* v. *Railroad Co.*, 47 S. C., at page 30, where Mr. Justice Gary, in delivering the opinion of the Court, uses this language: "If the complaint had alleged specific acts of negligence * * * then the plaintiff would be restricted to the introduction of such testimony only as would tend to prove the acts of negligence alleged in the complaint." This is for the obvious reason that it is neither fair nor just to require a party, who is brought into Court and called upon to answer for certain specified misconduct, to answer for other

misconduct of a totally different character with which he has not been charged, as he cannot reasonably be expected to be prepared to answer, as no such charge has been brought against him.    The view which we have adopted is specially applicable to a case like the present, where the nature of the wrong charged in the complaint is not only different from that for which the jury were erroneously instructed, the defendant could be held liable, but is also attended by very different consequences.    For in a case where the wrong charged in the complaint is wilful and done with intent to injure the plaintiff (as it is here), contributory negligence on the part of the plaintiff cannot be pleaded as a defense. See, in addition to the authorities cited by appellant's counsel, 7 Encycl. of Law (2 ed.), at page 443, where it is said: "The doctrines of contributory negligence have no application in cases where the injury is inflicted by the wilful act or omission of the defendant; in such cases, contributory negligence is not a defense, and in its legal sense cannot exist." And this doctrine has been expressly recognized in this State in the case of *Darwin* v. *Railroad Company,* 23 S. C., 531. There is also another material difference, and that is, under a charge like that made in this complaint, the plaintiff may recover not only his actual damages, but also punitive, vindictive or exemplary damages; whereas, under a charge of mere "ordinary negligence," the defendant may plead contributory negligence as a defense, and the plaintiff is not entitled to recover punitive, vindictive or exemplary damages, but is limited to a recovery of his actual damages. That the Circuit Judge did instruct the jury that they might find for the plaintiff, even if they were not satisfied that the charges as stated in the complaint were established, but were satisfied that the plaintiff's injuries were caused simply by the "ordinary negligence" of the defendant, may be seen by an inspection of his charge, which, for this purpose, should be set out by the Reporter in his report of the case, where we find the following language: "If you are satisfied that the injuries were due directly to the wanton conduct of the

railway company, or to the reckless conduct of the railway company, *or to the negligence of the railway company,* the plaintiff would be entitled to damages. If *simply to the negligence, want of due care* of the railway company, he would be entitled to actual damages. If due to the wanton conduct, the wilful conduct, with intent to injure plaintiff * * * he would be entitled to punitive damages" (italics ours). Again, the Circuit Judge used this language: "The plaintiff alleges that the blowing of the whistle and the letting off of steam was done recklessly. That means, done without care. Recklessly generally means gross negligence. It is a little stronger than carelessness in its usual application, but still an allegation of reckless conduct would justify a jury in finding that the conduct was ordinary negligence, want of due care, if the plaintiff failed to prove gross negligence, wanton, wilful misconduct, and what is meant by due care is simply that measure of caution and carefulness which was proper under the circumstances." Here it is clear that the Circuit Judge confounded two separate and distinct and, in fact, opposite things—recklessness and the want of ordinary care—and this, we think, was error. In 16 A. & E. Encycl. of Law, 392-395 (a passage which is quoted with approval by Mr. Justice Gary, in *Pickens* v. *Railroad Company,* 54 S. C., at page 505), it is said: "The element which distinguishes actionable negligence from criminal wrong or wilful tort, is inadvertence on the part of the person causing the injury. He may advert to the act of omission of which he is guilty, but he cannot advert to it as a failure of duty— that is, he cannot be conscious that it is a want of ordinary care—without subjecting himself to the charge of having inflicted a wilful injury, because one who is consciously guilty of a want of ordinary care is, by implication of law, chargeable with an intent to injure; malice 'being but the wilful doing of a wrongful act' * * * Negligence and wilfulness are the opposites of each other. They indicate radically different mental states. The distinction between negligence and wilful tort is important to be observed, not

REP.]                    April Term, 1901.

only in order to avoid a confusion of principles, but it is necessary in determining the question of damages, since in the case of an injury by the former (negligence), damages can only be compensatory, while in the latter (wilful wrong), they may also be punitive, vindictive or exemplary"—to which we may add another reason, that in the one case contributory negligence may be pleaded as a defense, while in the other it cannot be.    See, also, 7 Encycl. of Law (2d ed.), at page 443, where it is said: "Wilfulness and negligence are the opposites of each other, the one signifying the presence of intention or purpose, the other its absence.    This distinction has not always been observed, consequently there are cases that use the terms 'gross' or 'wilful' negligence to designate wilful injuries."    Now, while these passages refer, in terms, to "wilfulness" as contradistinguished from "negligence," yet it seems to us that the same may be said of "recklessness," especially where, as in this case, it was expressly charged in the complaint that the acts of wrong complained of were done *"with intent* to frighten and scare the plaintiff's team and injure the plaintiff, wilfully, wantonly and recklessly, and not regarding the rights of the plaintiff in that regard."    Now, it is quite true that negligence may be so gross as to amount to recklessness, but when it does, it ceases to be mere negligence, and assumes very much the nature of wilfulness; so much so, that it has been more than once held in this State that a charge of reckless misconduct will justify the jury, if the same be proved, in awarding punitive, vindictive or exemplary damages, while it never has been held, so far as we are informed, that the jury, under a charge of mere negligence, would be justified in awarding vindictive or exemplary damages.    One in charge of so powerful and dangerous a piece of machinery as a locomotive is bound to use care in operating it, so as to avoid, as far as practicable, doing injuries to others; and if he uses such machine recklessly and without regard to the rights of others, his conduct may as well be characterized by the term "wilful" as by the term "reckless."

for the difference, in this regard, between recklessness and wilfulness is scarcely appreciable.

The cases of *Glover* v. *Railway Company*, 57 S. C., 228, and *Appleby* v. *Railway Company*, 60 S. C., 48, cited by respondent, are not in point; for in both of these cases negligence and carelessness were distinctly alleged in both of the complaints, while here there is no allegation of negligence, and on the contrary the allegation is that the wrong complained of was done purposely and with intent to injure the plaintiff. The language contained in the fifth paragraph of the complaint cannot be regarded as an allegation of the facts constituting plaintiff's cause of action, but simply as a statement of the cause of the damages sustained by reference back to the facts constituting—"as aforesaid"—plaintiff's cause of action.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.