## Chesapeake & Ohio Railway Company v. Hill.

(Decided June 18, 1926.)

### Appeal from Floyd Circuit Court.

1. Carriers—Ticket Office One-Eighth of a Mile from Point where Passenger Boarded Train Held Not "at" Such Point, Authorizing Collection of Excess Fare.—Under tariff filed by railroad, providing that where passenger takes train at point where no ticket office is maintained 10-cent excess was not to be collected, held, that a ticket office, located across the river and one-eighth of a mile from point where passenger boarded train was not "at" such point within meaning of tariff, and ejectment of passenger for refusal to pay 10-cent excess was unlawful; "at" primarily meaning "near to," and involves idea of proximity.

2. Damages—Verdict to Passenger of $750.00 for Unlawful Ejectment from Train Held Excessive, where no Financial Loss was Suffered. Nor Physical Violence Offered.—Verdict of $750.00 to passenger for unlawful ejectment from train held excessive, where no physical violence or financial loss was occasioned, nor any substantial damage suffered beyond humiliation attending leaving train.

BROWNING &' REED and KIRK, KIRK & WELLS for appellant.

MAY, ALLEN & MAYO, for appellee.

OPINION OF THE COURT BY JUDGE ·DIETZMAN—Reversing.

On January 10, 1924, the appellee, who was then the county judge of Floyd county, ·purposed making a trip from Prestonsburg, where he lived · and which · is the county seat of Floyd county, to a coal mine he , was ·operating at · Beaver Creek, now called · Allen. Prestonsburg is situated on the east bank of the Big Sandy river. The railroad of the appellant runs along the west bank of this river. When this railroad was first constructed, ·appellant established a station known as West Prestonsburg on the west bank of the river and about one-quarter of a mile down the river from the main· portion of the ·town of Prestonsburg. For a long time those who wished to travel by train had to cross the river by ferry and walk down the track of the railroad· and then across the rail-. road bridge that spanned Middle creek until they came to the West Prestonsburg station. · Some time before the in-·cident occurred, out of which this suit arose, a bridge was ·built across the river from Prestonsburg resting on the west bank about one-quarter of a mile up the stream from West Prestonsburg. In due course of time, the appellant ·established a stop at the western end of this bridge, which stop, known as East Prestonsburg, is designated in this ·record as a flag stop. Appellant maintained no depot at this stop; only· a platform with perhaps a shed to pro-·tect the waiting passengers from the elements. No ·tickets were sold at this stop, the nearest ticket office being in the lobby of· the Hotel Elizabeth. This hotel ·was located over in the town of Prestonsburg and on a ·street which ran at right angles to the direction of the bridge which spanned the river.· This ·hotel was located at least 750 feet away from the platform at East Pres-·tonsburg and was the only place where tickets were sold in this vicinity except at the depot at West-Prestonsburg. ·At the time of· the incident involved in this suit, the tariffs of the appellant· on file with the Interstate Com-·merce Commission and with the State Railroad ·Commission provided that, in ·addition to the fares shown in such tariffs for transportation between the points therein de-·signated, the ''conductors will collect 10 cents in excess of the fares shown herein from passengers taking a train at a station·where ticket is open for sale of tickets. . . . Where a ticket office is not 'open· for 'sale· of ·tickets **or** ·where passengers take train· at a point where no ticket

office is maintained, the fare herein will be collected without the excess of 10 cents.''

On the morning of January 10th, above mentioned, the appellee was engaged in his official duties at the courthouse in Prestonsburg. Hearing the whistle of the train he wished to take, he hurried from the courthouse up Court street and across the bridge to East Prestonsburg. Although he knew of the ticket office in the Hotel Elizabeth, he did not stop there to buy his ticket, as he did not think he had time to do so. He arrived at East Prestonsburg a few minutes before his train arrived and on its arrival boarded it. The fare between East Prestonsburg and Allen, his destination, was 35 cents, and when the conductor came to collect his ticket, having none he tendered to the conductor this amount. The conductor refused to take the 35 cents without an additional 10 cents, which he claimed he was compelled to collect under the tariffs and rules of the company. Appellee says that the conductor remarked: ''You fellows at Prestonsburg have got to learn to buy your tickets before boarding the train.'' The conductor denies making this statement and no other witness introduced seems to have heard it. All the witnesses, both for the appellee and appellant, except appellee himself, testify that the conductor was courteous in his demeanor, but stated, in substance, that his instructions compelled him to collect the 10 cents and he was without power to waive the rule. When appellee declined to pay the additional 10 cents the conductor gave the signal to have the train stopped, and it was stopped at Bull creek, about a mile or two from the East Prestonsburg station. Appellee alighted from the train and walked back to East Prestonsburg. On the next day he journeyed to Allen and transacted what business he had there to do. There is no claim in the evidence that he was forcibly ejected from the train or that he suffered any financial loss by reason of the delay in his journey, or that he was insulted or humiliated except in so far that he had to get off the train on account of his refusal to pay the 10 cents extra fare and the claimed remark: ''You fellows at Prestonsburg have got to learn to buy your tickets before boarding the train.'' The appellee brought this suit for wrongful ejectment and was awarded a verdict of $750.00.

But two grounds are urged for reversal, the first of which is that on the facts as above stated the appellant was entitled to a peremptory instruction, and the second

of which is that the verdict is grossly excessive. Many authorities are cited by the appellant in support of its first contention, most of which supported the propositions that a rule requiring an additional fare of 10 cents where the passenger has an opportunity to purchase a ticket and does not do so, is a reasonable rule and will be enforced by the courts, and that the tariff filed with the proper authorities is binding on the carrier and passenger alike, and neither one may ignore it. That these propositions are the law cannot be disputed. But the problem we have to determine is the application of the appellant's tariff, admittedly binding, to the facts of this case. The appellant freely and voluntarily filed its tariff and in such tariff stated that: "Where the passenger takes a train at a point where no ticket office is maintained, the fare will be collected without the excess of 10 cents." It is not a question of whether or not the carrier was compelled to maintain a ticket office at East Prestonsburg, but whether or not the ticket office it did maintain in the Hotel Elizabeth, better than one-eighth of a mile away, could in any fair sense be said to be a "ticket office maintained *at* a point" where passengers took the trains. A mere statement of the question carried its answer. In Fayette County Board of Education v. Tompkins, 212 Ky. 751, 280 S. W. 114, we had occasion to inquire into the meaning of the word "at" and came to the conclusion that the word in referring to a place primarily means "near to" that place. It involves the idea of proximity. It cannot be said that a ticket office located across the river and on a side street and at a distance of over one-eighth of a mile away from the point where the train stopped was in such close proximity or so near to such place as to be "at" it within the meaning of the tariff. Therefore, under the tariff filed by the appellant, which under the cases it cites is binding upon it as well as the passenger, it was without power to collect this 10 cent additional fare since it maintained no ticket office *at* the point where passengers took the trains. When tendered the fare of 35 cents appellant should have accepted it. It follows that the ejectment of the appellee was unlawful and without right, and the appellant was not entitled to a peremptory instruction in this case.

However, the second ground relied on for reversal is controlling. No physical violence was offered appellee when he was required to leave the train. He does not show that there was any financial loss connected with his

delay in making the trip. He was not made ill and in fact shows no substantial damage beyond what humiliation attended his being required to leave the train because he refused to pay the excess fare. It is true he seems to believe that he was much insulted because the conductor referred to him as a "fellow." Although this appellation was deemed by the parties highly insulting when passed in the quarrel between Mr. Pickwick and Mr. Tupmann over the latter's avowed intention of attending Mrs. Leo Hunter's fancy dress ball attired as a bandit, yet we apprehend that the known connotation of the word has long since changed and that the calling a man "a fellow," at least in the context in which it was done here, is not so insulting as appellee insists in his brief. In the case of C., N. O. & T. P. R. R. v. Carson, 145 Ky. 81, 140 S. W. 71, where a passenger had been ejected from a train and where he had suffered far more in the ejection than appellee did in this, a verdict for $400.00 was reversed as being grossly excessive. This being true, the verdict for $750.00 in this case cannot be sustained, and for this reason the judgment of the lower court must be reversed.

Judgment reversed for a new trial consistent with this opinion.