13572

PAYNE v. COHEN ET AL.

(167 S. E., 665)

460

*Messrs. Johnson & Johnson* and *Lanham & Lanham,* for appellants,

*Mr. L. G. Southard,* for respondent.

February 2, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent is a young, unmarried man, serving an apprenticeship at the machine shops of the Southern Railway Company near Spartanburg.

The appellant S. G. Cohen was at the time of the occurrences complained of manager of the Lewis Stores in the City of Spartanburg. A person, representing himself to be

H. Roy Payne, and signing that name, in 1927 bought of Lewis Stores an overcoat, made a cash payment, and assigned of his wages as an employee of the Southern Railway Company a sum sufficient to protect the credit portion. This debt was paid.

On the 24th day of December, 1930, a person calling himself H. Roy Payne, and signing that name, bought of the Lewis Stores a suit of clothes, made a cash payment, and gave an assignment of so much of his wages as an employee of the Southern Railway Company as would protect the payment of the balance due. These two assignments were identical in name, and other marks of identification, of residence, employment, etc.

The amount covered by the second assignment was not paid when due. Thereupon a letter was written, which, according to the testimony of respondent, was addressed to *Mrs.* H. Roy Payne; however, it went to the address given on the assignment, and H. Roy Payne got it. He paid no attention to it. Shortly afterward another letter was sent him at the same address, which he got. He testified that he then went to the Lewis Stores; that the manager was out but he saw the bookkeeper, and informed her that he had not made the assignment, nor authorized any one to make it. A short time later he got a letter from Mr. Harvey W. Johnson about the account, and the railway company was advised of the assignment, and held up his wages to the extent of the assignment, viz. $32.50. He then went to the stores and saw Mr. Cohen, the manager. He testifies that he told Mr. Cohen that he had not made the assignment, nor the one in 1927; that he had never bought anything of that store, and did not owe it anything, and demanded that his pay check be released. He refused to go to see Mr. Johnson, appellants' lawyer with whom the claim had been placed, and refused to write his name.

This action was then brought, claiming $2,900.00 for actual and punitive damages for the withholding of his check

and for humiliation and embarrassment for that "he was held out to his superiors and his foreman as a deadbeat and as one who would not pay his bills, and as a dishonest, unreliable and untrustworthy character."

Defendants answered, setting up a general denial, except as admitted; setting up the history of the two assignments; that the notice to Southern Railway Company of the assignment was served July 28, 1931; that, upon complaint of plaintiff that his wages were being wrongfully withheld, the defendants gave written notice to the Southern Railway Company on August 29, 1931, to release any wages of the plaintiff that were being withheld under the assignment.

The case was tried before Judge Foster of the County Court of Spartanburg County, and a jury, and resulted in a verdict for $2,900.00 actual damages. The appeal is from the judgment entered on that verdict.

At the conclusion of all the testimony, defendant's counsel moved for a directed verdict as to punitive damages, which was refused. After the rendering of the verdict, he moved for a new trial on the ground that the verdict was excessive, unwarranted by the evidence, and that the jury was influenced by passion and prejudice. This motion was refused.

There are seven exceptions; it will not be necessary to treat them in detail, but our opinion will dispose of all of them.

It will be observed that the complaint is not based on any allegations of negligence, but is founded upon an allegation of willfulness and wanton invasion of the rights of the plaintiff. The verdict was for actual damages. Since actual damages may be awarded for willful and wanton conduct, it was essentially necessary that the jury be correctly instructed in the law pertaining thereto.

In the case of *Baldwin v. Postal Tel. Cable Company*, 78 S. C., 419, 421, 59 S. E., 67, Mr. Justice Woods, delivering the opinion of the Court, said: "* * * The plaintiff omitting to charge negligence, al-

leges it was done willfully, wantonly, or recklessly, he cannot recover either actual or punitive damages unless he proves willfulness wantonness, or recklessness"—citing *Proctor v. Southern Ry. Co.*, 61 S. C., 170, 186, 39 S. E., 351, and *Id.*, 64 S. C., 491, 42 S. E., 427; *Chiles v. Southern Ry. Co.*, 69 S. C., 327, 48 S. E., 252; *Machen v. Western Union Tel. Co.*, 72 S. C., 256, 261, 51 S. E., 697. Continuing the quotation: "But, under such allegations upon proof of willfulness, wantonness, or recklessness, he may recover both actual and punitive damages. *Chiles v. [Southern] Ry. Co., supra; Duke v. Postal Tel. Cable Co.*, 71 S. C., 104, 50 S. E., 675."

When, therefore, the trial Judge charged: "Then I charge you that an act is done willfully when it is done intentionally," he committed error prejudicial to the rights of appellant, and his language in amplification of that charge but added to the harmful effect of it. A man may do an intentional act in ignorance that he is doing a hurt or a wrong to another. Or one may do an intentional act under the honest belief that he is within the law and his rights in the premises. Mr. Chief Justice McIver in the case of *Kobler v. Southern Ry. Co.*, 62 S. C. at page 270, 40 S. E., 556, 563, quoted the italicized words from the charge of the Circuit Judge, and then said:

" '*The intentional doing of any unlawful act would be construed malicious*,'—the special error complained of being in the words which we have italicized. This, we think, states the rule in stronger terms than are justified either by principle or authority. One may intentionally do an act which proves to be unlawful without the slightest design to do a wrong to any one. For example, one may intentionally cut trees growing on land which proves upon investigation to be the land of another, although he honestly believed * * * that the trees were on his own land; and in such a case no one would say that the act was malicious, although the person who cuts the trees did an unlawful act intentionally."

So, in the present case, even if the notice of the assignment was filed with the railroad company after plaintiff had told defendants that he had not made the assignment, and the defendants honestly believed, and had reasonable ground for that belief, that plaintiff had made the assignment, and they were moving solely to protect their rights, they were not liable for willfulness nor wantonness simply because they intentionally notified the railroad of the assignment. Surely they had the right to maintain the *status quo* until they could investigate the matter. In the light of the very peculiar circumstances of the two assignments by one H. Roy Payne, one of which had been paid, they would not have been precluded by the mere statement of plaintiff that he had not signed the assignments from taking steps to protect their interests, in the event it was proved that he had signed them.

The erroneous charge was intensified in its hurtful effects by the further charge, as follows: "So, in determining whether or not—whether punitive damages are to be awarded you consider the circumstances of this case, and then enquire whether a person of ordinary reason would have filed this purported assignment after receiving notice of its falsity; if it was filed after receiving such notice, or if you can determine that the notice was received by the defendants, or either of them, that the assignment was a false one, not the assignment of the plaintiff in this case, and you determine under those circumstances a man of ordinary reason and prudence would not have filed the assignment, that the defendant did receive notice that it was false and thereafter filed it and that it was a false assignment—that is to be determined by you, gentlemen—such a finding would support punitive damages."

Such charge might support a finding of actual damages under an allegation of negligence, but it is not authority for a finding of punitive damages. Since the jury say by their verdict that they did not give punitive damages, it

must be that the verdict is predicated in large measure upon a finding of willfulness and wantonness.

The harmfulness of the charge that "an act is done willfully when it is done intentionally" is apparent. The verdict cannot be supported upon the theory of actual pecuniary loss or damages sustained by plaintiff. The defendants never got his pay check. They released it in thirty days after it was held up on their notice. The measure of his damage on this score was the interest on $32.50 for thirty days.

If this theory be incorrect, and the jury did not include damages for wantonness and willfulness, then the verdict can be explained upon no other hypothesis than that it is the result of caprice or passion or prejudice—in which case it ought not to stand.

We hold it to be the settled rule of law in this jurisdiction that the granting of a new trial on the ground that the verdict is so excessive as to show caprice or prejudice is in the discretion of the trial Judge, and, unless abuse of that discretion is shown, the order refusing the motion for new trial on that ground will not be disturbed.

"But if a verdict which is only moderately excessive is allowed to stand, the trial. Judge is alone responsible; for he alone is vested with power and discretion to set it aside, absolutely or conditionally. This Court has no power to do so, *unless, as was said in Bing v. [Atlantic Coast Line] R. R. Co., 86 S. C., 530, 68 S. E., 645, it is so excessive as to warrant the conclusion 'that the circuit judge abused his discretion in refusing to grant relief against it. * * * To allow such a verdict to stand would be a just reproach upon the administration of justice."* (Italics added.) *Huggins v. Atlantic Coast Line R. R. Co.,* 96 S. C., 267, 79 S. E., 406, 410.

The verdict in that case was allowed to stand because a young man 35 years old, earning $150.00 to $200.00 a month, with a wife and children to support, was totally and permanently disabled, doomed for the balance of his life to suffer bodily pain, and necessarily mental anguish.

" 'This Court has no jurisdiction to review matters of fact in an action at law; and therefore, unless a verdict is wholly unsupported by evidence, *or is so excessive as to justify the inference that it was capricious, or influenced by passion, prejudice or other considerations not found in the evidence, if it is excessive the responsibility * * * must rest upon the trial Judge.'* We cannot say that the verdict in the present case is wholly unsupported by evidence, or *that it is so excessive as to justify the inference that it was the result of caprice, passion or prejudice. Consequently, this Court cannot interfere.*" (Italics added.) *Brewer v. A. C. L. Ry. Co.,* 149 S. C., 454, 147 S. E., 596, 599, citing *Bing v. Atlantic Coast Line Ry. Co., supra, Graham v. Atlantic Coast Line Ry. Co.,* 89 S. C., 1, 71 S. E., 235.

The award of $7,500.00 was not disturbed because the evidence in that case showed that a person in feeble health was not given sufficient time to alight from a train; was put off the train three-fourths of a mile from town, and was forced to walk and crawl back; was made sick for four weeks, etc. If the Court had found it excessive, it is clear that it had authority to order a new trial

"The appellant also contends that the Court committed error in refusing their motion for a new trial made upon the ground that the amount of damage assessed by the jury was so excessive and unreasonable as to show that it was the result of caprice or prejudice. This contention is without merit. In the view of the evidence taken by the jury the charge was a serious one, and the matter of fixing the amount of damages was peculiarly within their province. 17 R. C. L., 444. Furthermore, the granting of a new trial on this ground is in the discretion of the trial Judge, and unless there is abuse of discretion, which is not shown in the present case, this Court will not interfere. See *Brewer v. A. C. L. Ry. Co.,* 149 S. C., 454, 147 S. E., 596."

It is well to state here that this Court has held that the phrase "abuse of discretion" does not carry with it an im-

plication of conduct deserving censure, but means simply that the trial Judge committed error of law—in the exercise of his discretion.

The action in the *U. S. Fidelity & Guaranty Co., Appellant, v. John Millonas,* 206 Ala., 147, 89 So., 732, 738, 29 A. L. R., 520, was for damages for the discharge of an employee by an employer who was protected by an indemnity policy of insurance in the appellant company. The discharge of the employee was secured by threats to cancel the policy unless he was discharged, for the reason that he was prosecuting a claim for injuries.

Plaintiff had a verdict for $25,000.00. We quote from the opinion of the Alabama Supreme Court: "The last question to consider relates to the excessiveness of the verdict. The utmost pecuniary loss insisted upon by counsel for plaintiff is $2,250.00. Within something like two months from his discharge, he obtained employment; * * * and we are of the opinion that such loss, under the evidence in the case, in no event exceeds $1,000.00. Punitive damages were recoverable under the evidence, for, if the plaintiff is to be believed, his rights were maliciously and wrongfully interfered with. The amount of exemplary damages to be awarded is a matter resting largely in the discretion of the jury, but, as has been previously stated by this Court, *this is not an unbridled discretion, and if it appears to the judicial mind that passion rather than reason has produced the result, the verdict will be declared excessive and reduced accordingly.* One has only to read the record to see that the case presents a most favorable opportunity for a strong and passionate appeal to the jury in behalf of the preservation of human rights and the condemnation of anything bordering upon oppression. Indeed, counsel for appellant demonstrated, upon the submission of this cause in oral argument, his ability to eloquently present the case in the most forcible manner."

This language is especially applicable to the able counsel for respondent in our present action.

Continuing the quotation from the Alabama case: "The amount of the verdict—$25,000.00—is not only greatly disproportionate to the actual damages suffered, but under the circumstances we are of the opinion that neither justice nor the public welfare call for the infliction of so heavy a penalty."

Accordingly the judgment was reversed and the case remanded for a new trial, unless plaintiff remitted all damages in excess of $6,000.00. This was done.

The action in the case of *Chesapeake & Ohio Ry. Co. v. Hill*, 215 Ky., 222, 284 S. W., 1047, 1048, 48 A. L. R., 327, was for damages for the ejection of plaintiff from a train for refusal to pay excess fare. The opinion of the Court contains this: "However, the second ground relied on for reversal is controlling. No physical violence was offered appellee when he was required to leave the train. He does not show that there was any financial loss connected with his delay in making the trip. He was not made ill, and in fact shows no substantial damage beyond what humiliation attended his being required to leave the train because he refused to pay the excess fare. It is true he seems to believe that he was much insulted because the conductor referred to him as a 'fellow'. Although this appellation was deemed by the parties highly insulting when passed in the quarrel between Mr. Pickwick and Mr. Tupmann, over the latter's avowed intention of attending Mrs. Leo Hunter's fancy dress ball attired as a bandit, yet we apprehend that the known connotation of the word has long since changed, and that the calling a man 'a fellow,' at least in the context in which it was done here, is not so insulting as appellee insists in his brief. In the case of *Cincinnati, N. O. & T. P. R. Co. v. Carson*, 145 Ky., 81, 140 S. W., 71, where a passenger had been ejected from a train and where he had suffered far more in the ejection than appellee did in this, a verdict for $400.00 was reversed as being grossly excessive. This being true, the verdict for $750.00 in this case cannot

be sustained, and for this reason the judgment of the lower Court must be reversed."

In the case at bar the pecuniary damage to plaintiff was a trivial one. The only other specification of damages was that he suffered humiliation and embarrassment. The evidence in support of that allegation is meager and unsatisfactory, wholly inadequate to support a verdict for $2,900.00.

The judgment is reversed, and the case remanded for a new trial.

MR. ACTING ASSOCIATE JUSTICE C. C. FEATHERSTONE concurs.

MR. CHIEF JUSTICE BLEASE (concurring) : I concur in the holdings of Mr. Justice Bonham as to the error in the charge of his Honor, the presiding Judge. I do not concur in the conclusion, which I understand he reached, that the judgment should be set aside on the ground that the verdict showed prejudice and caprice on the part of the jury.

MR. JUSTICE STABLER concurs.