8226

GEDDINGS v. ATLANTIC COAST LINE R. R. CO.

1. STRIKING OUT ALLEGATIONS — RAILROADS — FREIGHT —WILFULNESS — TRAVELED PLACE.—The words sought to be stricken out of the complaint here were intended to allege a reckless disregard of the rights of the traveling public on the right of way of the railroad company in throwing cross arms for telephone poles off a moving train along its right of way where the public were accustomed to travel.

2. IBID.—APPEAL.—Even if there be error in refusing to strike out allegations, it must be made to appear that such refusal was prejudicial to warrant reversal.

3. PUNITIVE DAMAGES may be allowed for the intentional doing of an act which the actor is under the legal obligation to know might cause injury to others.

4. RAILROADS—FREIGHT.—It is the duty of a railroad company to unload freight transported by it, and it cannot relieve itself of liability for injury caused by throwing cross arms for telegraph poles off a moving train by showing the servants of the telegraph company were in the car throwing out the cross arms.

5. PLEADINGS—CHARGE.—Where the Court instructs the jury there is no evidence of wilfulness as alleged in one particular and the jury return a verdict of punitive damages, there being other acts of wilfulness alleged and proof adduced thereon, the verdict is not in disregard of the instructions.

Before COPES, J., Sumter, November, 1911. Affirmed.

Action by Henry R. Geddings against Atlantic Coast Line Railroad Company, C. E. Henry and Alger Hawkins. So much of the complaint as is in question is:

2d. "That at the times hereinafter mentioned the plaintiff was working for the defendant, Atlantic Coast Line Railroad Company, as one of its section force.

3d. "That on or about the 23d day of August, 1910, the plaintiff was working with said section force on the railroad right of way of the said Atlantic Coast Line Railroad Company, between Alcolu and Manning, near what is

known as the 'Sixteen Mile Post.' That the plaintiff and
the other section force were engaged in clearing off the
right of way. That while so engaged a freight train came
along, coming from toward Sumter and going toward
Manning. That said train was running at the speed of
about thirty miles an hour. That as said train approached
the plaintiff turned his back toward the way from which
the train was coming, in order to prevent cinders and smoke
from getting into his eyes. That the plaintiff got out of
the way of the train and stood some eight or ten feet from
the railroad track, with his back turned as aforesaid, and
that while standing there and without any notice to the
plaintiff whatsoever, the agent of the defendant, Atlantic
Coast Line Railroad Company, threw from said train, under
the said defendant's instructions, what is known as a 'cross
arm' for telegraph poles, and struck the plaintiff below the
knee on the left leg, knocked him down and broke his left
leg, and knocked the plaintiff into the ditch along said right
of way. The plaintiff alleges that under the instructions
of the defendant, Atlantic Coast Line Railroad Company,
that said cross arm and other cross arms were thrown off
of the train wherever needed, while going at its ordinary
speed, for the purpose of saving time, and not stopping
where it was necessary to put off cross arms for the tele-
graph poles. The plaintiff alleges that all of this was done
in a wilful, wanton, negligent and reckless manner by the
defendant, Atlantic Coast Line Railroad Company.

4th. "The plaintiff alleges that the defendants knew that
the right of way of the Atlantic Coast Line Railroad Com-
pany at the point herein alleged, and other points, were
constantly and with the knowledge and consent of the said
Atlantic Coast Line Railroad Company, *traveled by the
public, as well as* being worked upon by the section hands
of the defendant, Atlantic Coast Line Railroad Company,
and knew that the throwing off of said cross arms while

the train was running was dangerous and liable to injure *the traveling public, and especially* the section hands of the Atlantic Coast Line Railroad Company, by the throwing off of the cross arms in the manner herein alleged. The plaintiff further alleges, that the defendants knew that he was standing on the right of way, where he was required to be in the performance of his duties to the defendant, Atlantic Coast Line Railroad Company, at the time he was hurt aforesaid. That the defendant, Alger Hawkins, saw the plaintiff standing on the right of way, as aforesaid, or by the slightest exercise of care could have seen the plaintiff and avoided the injury aforesaid, but without regard to the plaintiff's rights, and in a wilful, wanton, reckless and negligent manner, intentionally threw said cross arm and struck and injured the plaintiff, as aforesaid. The plaintiff further alleges, that it was negligence on the part of the defendants, in running said train at such a rapid rate of speed, and, while so running, requiring and allowing the throwing off of said cross arms on the right of way, upon which they knew that the plaintiff and other section hands were engaged in work, *and upon which they knew the traveling public constantly traveled,* and that injury would likely occur to some of them. That, notwithstanding this knowledge on the part of the defendants, the defendants required or allowed the cross arm to be thrown, as aforesaid, and injured the plaintiff, as aforesaid, which injury caused this plaintiff great suffering, physical pain, mental anguish, loss of time and expense, and maimed and permanently injured him for life, all through the carelessness, recklessness, wanton and wilful conduct and negligent acts of the defendants, to the damage of the plaintiff in the sum of twenty-five thousand dollars."

The defendant, Atlantic Coast Line Railroad Company, appeals on the following exceptions:

1. "Because his Honor erred in overruling defendant's motion to strike out certain portions of the complaint alleging use of defendant's right of way by the public; whereas, the said motion should have been granted, for the reason that the allegations in question were not essential to plaintiff's cause of action, were irrelevant and redundant, and served as a basis for the admission of evidence over defendant's objection, the allegations and the evidence being misleading to the jury and prejudicial to defendant.

2. "Because his Honor erred in allowing plaintiff to testify, over defendant's objection, as follows: 'While working there, did you see people traveling and using that right of way where you were working? Yes, sir. Mr. McLemore: We object. That is, of course, evidence in response to the allegations which your Honor allowed to remain in the complaint. We will necessarily maintain the position, taken by objection, to any testimony of that kind. Have you seen people traveling along there, the section from Alcolu to Manning? Yes, sir. Much or little? Right smart; great many people travel backwards and forwards there. Is there not a regular footpath by the track where they travel? Yes, sir.'

"Such testimony being irrelevant and incompetent, because the issue to which it was directed was not properly an issue in this case, and the testimony was misleading to the jury and prejudicial to defendant.

3. "Because his Honor erred in allowing the witness, Charlie Blanding, to testify, over defendant's objection, as follows: 'About where Mr. Geddings was hurt, did people travel much on the side? Mr. McLemore: I object on the same ground. Did people travel along there in going to Manning and Alcolu? Yes, sir. Travel over it day and night? Yes, sir; day and night, pretty regular.'

"Such testimony being irrelevant and incompetent, because the issue to which it was directed was not properly

an issue in this case, and the testimony was misleading to the jury and prejudicial to defendant.

IV. "Because his Honor erred in allowing the witness, Hawkins, to testify, over defendant's objection, as follows: 'Didn't you all know people traveled that right of' way a great deal? I never saw many people walking that right of way. Mr. McLemore: We object, on same ground.

"Such testimony being irrelevant and incompetent, because the issue to which it was directed was not properly an issue in this case, and the testimony was misleading to the jury and prejudicial to defendant.

5. "Because his Honor erred in allowing the witness, Collins, to testify, over defendant's objection, as follows: 'Don't you know constant travel all along a footpath going to Manning by people from Alcolu down this portion along on the right of way, people and section hands? Mr. McLemore: We object on the same ground. Don't you often pass them? Answer that question. Court: Answer the question. Why, yes, sir.'

"Such testimony being irrelevant and incompetent, because the issue to which it was directed was not properly an issue in this case, and the testimony was misleading to the jury and prejudicial to defendant.

6. "Because his Honor erred in allowing the witness, Mason, to testify, over defendant's objection, as follows: 'That is where they are supposed to. Isn't there a great deal of travel along this point, people walking alongside the railroad track going to Manning? Mr. McLemore: We object, on same ground. Ain't a whole lot of people going along there? We see a few people sometimes, but I wouldn't call it a great deal by a long shot. That is not a public highway. But it is a road, about three or four miles from Manning, and a good many people live at Alcolu? Yes, sir. And Manning about three or four miles below? About four miles. And in order to get to Manning, a man

31—91

walking, a party on foot, if they didn't go the railroad right
of way, wouldn't they have to go a mile out of the way to
get to that same point on the trestle? I don't know any-
thing about the public highway; I never walk it. The public
road don't go parallel with the railroad at that point? I
don't know where it goes—out in the woods somewheres.
So, if a party didn't walk along the right of way, he would
certainly have to go in the woods somewhere before he got
to the trestle? I guess he would. He can go on the right
of way; he can walk along the right of way. A footpath
like this along the right of way? I don't know. There is
a path on the right of way? Yes, sir; certainly, is a road
by the track.'

"Such testimony being irrelevant and incompetent,
because the issue to which it was directed was not properly
an issue in this case, and the testimony was misleading to
the jury and prejudicial to defendant.

7. "Because his Honor erred in overruling defendant's
motion, made at the close of all the evidence, for a direc-
tion of verdict in its favor on the cause of action for puni-
tive damages; whereas, he should have granted the motion,
there being no evidence in support of such cause of action.

8. "Because his Honor erred in charging the jury as
follows: 'Wilfulness, gentlemen of the jury, is the inten-
tional doing of some act, or the failure to do some act,
according to one's own will, regardless of the right of
others, when the party knows, *or is under legal obligation
to know,* that the doing or the failing to do such act might
cause injury to other persons.' The charge in the portion
italicized being incorrect, misleading and prejudicial to
defendant, it being submitted that the doing of an act calcu-
lated to injure another cannot be properly characterized as
wilful unless there is an advertent failure to perform the
duty imposed by law and actual knowledge that the failure
to do so might result in injury to another.

9. "Because his Honor erred in refusing to charge defendant's first request, which was as follows: 'I charge you that there is no evidence of wilfulness in this case within the allegations of the complaint, and you will only consider the question if there is evidence of negligence in the conduct of the railroad company.' It being respectfully submitted that such request contained a sound proposition of law, directly applicable to the case.

10. "Because his Honor erred in charging plaintiff's first request, which was as follows: 'A railroad company, having a charter from this State, owes certain duties to the public and its employees, and it is responsible for a breach of this duty and injury thereby to said person or employee, whether such breach was caused by said company, or by any other company, in carrying out those purposes and transactions for which said railroad company was chartered, provided the company which caused the injury, if any, was operating with the consent, knowledge or authority of the railroad company.'

"It being submitted that the request was inapplicable to the case, was misleading, and was prejudicial to defendant, in that there was no issue as to the performance by 'any other company' of the 'purposes and transaction' for which defendant corporation was chartered, nor was there any evidence tending in any way to establish this; the evidence, on the contrary, showing that the employees of the telegraph company were unloading from the moving train property of the telegraph company, and were not in any way carrying on the business of defendant corporation, or performing any act inuring to its benefit. The request, as charged, necessarily carried to the jury the intimation that the unloading of the material, which caused plaintiff's injury, was being done in the interest of and for the benefit of defendant corporation.

11. "Because the jury disregarded and violated the charge, because his Honor having charged defendant's second request as follows: 'I charge you that there is no charge in the complaint of negligence on the part of the conductor in failing to keep a lookout, and you cannot consider this question in reaching your verdict. The plaintiff is confined to the specific acts of wrong alleged in the complaint.' The jury were bound thereby.

"The only possible evidence which the jury could have accepted as establishing the cause of action for wilfulness was the evidence as to the failure of the conductor to keep a lookout. The verdict, upon its face, shows that the jury found for the plaintiff on the issue of wilfulness.

12. "His Honor erred in refusing to order a new trial for the reason contained in the first ground of defendant's motion, which was as follows: 'There was no evidence of wilfulness or wantonness.' "

*Messrs. P. A. Willcox, Mark Reynolds* and *L. W. McLemore,* for appellants. *Messrs. Reynolds* and *McLemore* cite: *Operating a train at a high rate of speed is neither negligence nor wilfulness:* 81 S. C. 107. *An act cannot be wilful unless done with intent and knowledge:* 69 S. C. 434; 62 S. C. 252. *Instruction not based on any theory of the evidence is error:* 70 S. C. 327; 66 S. C. 22; 72 S. C. 162.

*Mr. L. D. Jennings,* contra, cites: *Allegations as to traveled place were properly left in:* 53 S. C. 210; 65 S. C. 430. *It is duty of carrier to unload freight, and this duty cannot be delegated to another so as to relieve it of liability:* 73 S. C. 572; 77 S. C. 550; 74 S. C. 332; 75 S. C. 170.

June 4, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendants.

The allegations contained in the second, third and fourth paragraphs of the complaint are material to the questions involved, and will be reported.

The defendants denied each and every allegation of the complaint.

The jury rendered a verdict in favor of the plaintiff, for $3,000 actual damages and $2,000 punitive damages, against the Atlantic Coast Line Railroad Company; and the said defendant appealed upon exceptions, which will be reported.

The defendants made a motion, to strike out the words in the complaint, which we have italicized, but the motion was refused, and this constitutes the first assignment of error.

The plaintiff is required to specify, in his complaint, the grounds upon which he bases his cause of action for negligence; also, the grounds upon which he bases his cause of action for punitive damages.

The italicized words were intended to allege, a reckless disregard of the rights of the traveling public, at the said place, in throwing the cross arms from the train, from which the law imputes malice, towards the plaintiff. or any other person thereby injured. The fact that the right of way where the injury was sustained, was constantly, and with the knowledge and consent of the appellant, traveled by the public, tends to show that it was recklessness, to throw the cross arms from the train at that point. But even if such words were erroneously allowed to remain in the complaint, the exceptions raising this question cannot be sustained, as it has not been made to appear that such error was prejudicial.

It is conceded by the appellant's attorneys, that the exceptions assigning error on the part of his Honor, the presiding Judge, in permitting the introduction of testimony, to prove the italicized allegations, cannot be sustained, in case this Court sustains the Circuit Court in refusing to strike out the italicized words.

The next question for consideration is, whether there was any testimony tending to show, that the plaintiff was entitled to punitive damages.

There was testimony tending to sustain the allegations of the complaint, in this respect.

The next question which will be considered, is presented by the eighth exception.

It is only necessary to refer to the case of *Tolleson* v. *Ry.*, 88 S. C. 7, to show that this exception cannot be sustained. In that case, the Court uses this language: "Not only is the conscious invasion of the rights of another, in a wanton, wilful, and reckless manner, an act of wrong, but that the same result follows, when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner, that a person of ordinary reason and prudence would say, that it was a reckless disregard of another's rights."

The tenth exception raises the next question that will be considered.

It is the duty of a railroad company, to load and unload its freight, and in the present case, the appellant could not escape liability, by delegating such duty, to the telegraph company.

We have so recently discussed a similar question, that we deem it only necessary to cite the case of *Reed* v. *Ry.*, 75 S. C. 162, 55 S. E. 218, to show that this exception cannot be sustained.

The last question to be determined, is raised by the eleventh exception.

There was other testimony of negligence, besides the failure of the conductor to keep a proper lookout. Unloading the cross arms at a point traveled by the public, while the train was running at a rapid rate of speed, tended to show a reckless disregard of the rights of the public, and of the plaintiff.

Judgment affirmed.

MR. JUSTICE WOODS *did not sit in this case.*