No. 20,768.

GEORGE SENNING, *Appellant*, v. THE ARKANSAS VALLEY IN-
TERURBAN RAILWAY COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

INTERURBAN RAILWAY—*Personal Injuries—Duty Owed to Licensee by Railway Company—Wanton Negligence.* In an action against an interurban electric railway company the plaintiff's evidence tended to show these facts: He came to the company's station about dusk with friends who were leaving. After they had boarded the car and before it started he went down into the space between it and the station platform to look for a coin his little daughter had dropped. The platform was about two feet above the ground and five feet from the track. Passengers were received and discharged by a gangplank laid to the rear steps. As the defendant was stooping over, facing away from the car, it started without any signal being given, and as the front wheels turned in the other direction on a curve the rear step protruded and struck him. *Held,*

1. In the aspect most favorable to the plaintiff, he was but a licensee while in the place between the platform and the track, and the company owed him no duty to give him warning of the starting of the car.

2. If such a duty had been owing to him the omission to perform it would have constituted mere negligence and not wanton misconduct.

3. In that case his own failure to use reasonable care for his safety would bar a recovery.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed June 9, 1917. Affirmed.

*Earl Blake, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, for the appellant.

*Chester I. Long,* and *Austin M. Cowan,* both of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: George Senning, while standing beside the track of the Arkansas Valley Interurban Railway Company, was struck by the rear step of a car as it swung around a curve. He brought an action against the company on account of the injury received. A demurrer to his evidence was sustained, and he appeals.

The accident took place just as the car was leaving the station at Wichita. The platform used by passengers is about fifteen feet wide and two feet high, and is a little longer than one of the cars. The track is about five feet east of the platform, paralleling it for its full length, but a curve to the east begins about opposite its south end. Passengers are received and discharged by means of a gangplank placed from the platform (near the north end) to the rear step of the car.

The plaintiff had gone to the station with friends, who were leaving by the seven o'clock car on the evening of October 14. When the party reached the station the car was already there. The plaintiff accompanied his friends to the gangplank, and after they had crossed it he walked south along the platform about two-thirds of the length of the car, to where his wife and little daughter were standing. He passed them, and stopped for five or ten minutes talking with an acquaintance. His daughter then came to him and told him she had dropped a coin to the ground below the platform. He undertook to find it. He descended the steps at the south end of the plat-

form, which brought him upon the sidewalk of the street, which runs east and west. He then walked north between the car and the platform about a third of the length of the car and lit several matches, looking for the coin. While he was stooping over, facing to the west, the car started, moving to the south. As the front wheels turned to the east on the curve the rear steps protruded to the west and struck the plaintiff over the right kidney, causing the injury of which he complains. As the car stood upon the straight track the overhang was about a third of the distance from the rail to the platform. The curve caused the rear steps to protrude, at the point where the plaintiff was struck, to about half the distance. The nearest the steps were brought to the platform by the swing at any point was about two feet.

The negligence relied upon is the starting of the car without signal or warning. The defendant maintains that it owed no duty to the plaintiff in this regard, and that in any event his recovery is precluded by his own conduct.

1. The failure of the defendant's employees to give a signal before starting the car can not be a basis of liability to the plaintiff unless the omitted duty was one they owed to him (*Express Co. v. Everest,* 72 Kan. 517, 83 Pac. 817), and this could not be the case unless they knew of his presence or had reason to expect it. Clearly the ground between the track and the platform was not a place where passengers, passers-by or bystanders were ordinarily to be looked for. The plaintiff in the most favorable aspect was a mere licensee, and the defendant was under no obligation to be actively vigilant in protecting him against danger. (33 Cyc. 767; 29 Cyc. 452; Notes, 17 L. R. A., n. s., 916, L. R. A. 1915 B, 827.) A suggestion is made that as the plaintiff lit several matches it may be inferred that he was seen by some of the defendant's employees, but we regard the inference as too remote. The petition did not allege that any employee saw the plaintiff.

2. Even if it should be assumed that the defendant did owe a duty to the plaintiff to give a signal before the car was started, the omission to do so could amount to no more serious misconduct than ordinary negligence—the evidence was not capable of supporting a reasonable inference that the defend-

ant's employees anticipated or should have anticipated that the car would strike the plaintiff, and were indifferent to the consequences.

"One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the .class with the willful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrong-doer is that instead of affirmatively wishing to injure another he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does or not." (*Railway Co. v. Baker*, 79 Kan. 183; 189.)

In the case just cited it is said of the circumstances necessary to warrant characterizing as wanton the conduct of trainmen toward a person in a position of peril:

"Nor is it enough that they know some one might be in the place of danger; the probability must be so great—its obviousness 'o the employees so insistent—that they must be deemed to realize the likelihood that a catastrophe is imminent and yet to omit reasonable effort to prevent it because indifferent to the consequences." (p. 187.)

3. If therefore the defendant did omit a duty which it owed to the plaintiff, the omission was not such as to create a liability regardless of his own conduct. He knew when he went between the platform and the track that the car was likely to start within a short time. The place, although obviously not intended for the use of the public, was not necessarily one of great danger. There was abundant room for a person to stand between the platform and the nearest point to which any part of the car could approach it. The exercise of reasonable care required the plaintiff to keep himself beyond the reach of the end of the car as it swung around the curve. The outward swing of the rear step as the front wheels took the curve was a matter of which he was chargeable with knowledge, since it is a common if not universal characteristic of such cars and is a necessary consequence of the end of the car projecting over the wheels. (Notes, Ann. Cas. 1916 E, 679; L. R. A. 1915 C, 604, and prior notes in that series.) Incidentally, if he was not aware of this phenomenon, then notice that the car was about to move would not have advised him of his danger.

The judgment is affirmed.