JOHN SIESSEGER, Appellee, v. J. C. PUTH, Appellant.

No. 40871.

OCTOBER 27, 1931.

Senneff, Bliss, Witwer & Senneff and Smith & Feeney, for appellee.

Breese & Cornwell, for appellant.

GRIMM, J.—The appellant bases his claim for reversal upon error alleged to have been committed by the court in overruling his motion for a directed verdict, and also for alleged error in certain instructions given by the court to the jury.

The plaintiff, a boy seven years of age, is the nephew of

the defendant. There is no question, under the record, that at the time of the accident, the boy was a passenger as a guest, by invitation and not for hire, in the automobile owned and driven by the defendant. The accident occurred August 5, 1928. The defendant purchased the car on May 20th of the same year and had driven it 2,367 miles. He had not driven a car prior to May 20th. The party left Mason City about 7 o'clock in the morning for a Sunday trip to Decorah. The accident occurred about two miles east of Osage on primary road No. 9—a graveled road running east and west. There were seven people in the car, the defendant sitting in the front seat at the wheel, his wife being at the right of him, holding the plaintiff on her lap. The other occupants, the mother of the plaintiff, a cousin, Dorothy Siesseger, and a Mr. Westloff occupied the rear seat and a girl, Mary, sat on a stool between the two seats. Relative to the accident, Dorothy Siesseger testified:

"There was no turn near the place of accident. The road was straight there. Mr. Puth was driving quite fast and I was frightened on account of his speed, particularly at the turns in the highway. We were going about fifty miles an hour when we came down that incline about a quarter of a mile before the accident. The car began swerving. Mr. Puth put his foot on the accelerator instead of the brake and the car increased in speed and we continued swerving and he lost control completely and we plunged into the ditch. I was not injured. The car tipped over on its side enough to make it difficult to get out. Grade was about ten feet high. The wheels buried themselves in the mud. After the accident, Mr. Puth had the steering wheel in his hand."

Shortly after the accident, the father of the plaintiff was notified by telephone of the accident and he arrived at Osage where the boy had been taken for medical treatment about 10:30 A. M. Shortly thereafter, he went to the place of the accident and as to his observations there, he gave the following testimony:

"Mr. Puth's car was in the ditch, nose down, front of the car driven into the mud, wheels and spring and everything, clear to the radiator. The grade at this point was about ten

feet high. The wind shield was broken. The front seat was broken loose and the right rear door broken out. There was an incline about a quarter of a mile or maybe less from the place of the accident. There was a large winged culvert about fifteen or twenty feet east of the car. Along there were slight depressions with loose gravel. There was no obstruction to the view of the grade or highway as you approached this place. This was primary highway No. 9. It is a graveled road. About forty feet wide. There was such loose gravel on it as ordinarily would be found on graveled highways. The Puth car was on the north side of the grade.''

He further testified as to a conversation he had with the defendant, as follows:

''Three or four days later, I, talked to Mr. Puth about the accident. He said he was out in the open road and the road looked good and he opened her up and he looked at his speedometer a little while before he came to this place, and then he was going fifty miles an hour. Said he was going between forty-five and fifty miles an hour at the time of the accident. That he was probably driving too fast. Said he wished he had never seen a car then he wouldn't have gotten into this trouble. Said the car hit some loose gravel and started weaving from side to side. That instead of slowing down and putting his foot on the brake, he put it on the gasoline and increased the speed until he lost control of the car and went into the ditch. That when he got out of the car he had the steering gear in his hand.''

On cross-examination, said witness testified as follows:

''Mr. Puth told me that just before he went into the ditch he hit some loose gravel. Said there was a slight depression there. The road is a very highly traveled road and I think between the time of accident and the time I saw the place a great many cars had gone by there. Mr. Puth told me that when he struck this depression and loose gravel in the road, that caused his car to swerve and threw him out of control of the car. That he tried to put his foot on the brake but instead it came down on the accelerator. That they went some distance after that at increased speed before the car went into the ditch. That his foot coming onto the accelerator caused the car to shoot ahead

and that resulted in his losing control of the car; that he got excited when the car started to swerve and so put his foot on the gas instead of the brake."

The boy testified:

"On the trip there was a while that we were weaving and kind of rolling and Mr. Puth went to step on the brake and stepped on the starter—on the gas and went sideways and went into the ditch."

The foregoing constitutes substantially all of the testimony relative to the accident in which the boy was injured. There is no conflict on the facts.

I. What is the meaning of the word "reckless" contained in Section 5026-b1 of the Code of 1927? The entire section is as follows:

"Liability to guest. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the *reckless* operation by him of such motor vehicle." (Writer's italics.)

At the threshold of the inquiry as to the meaning of the word "reckless," consideration must be given to the circumstances under which this statutory provision was passed. In the Code of 1924, there appeared as Section 5026 the following:

"Liability for damages. In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

Chapter 119 of the Acts of the 42nd General Assembly reads as follows:

"An Act to amend the law as it appears in section five thousand twenty-six (5026) of the code, 1924, so as to *limit the civil liability of owners* and operators of automobiles.

"Be it Enacted by the General Assembly of the State of Iowa:

"Section 1. That the law as it appears in section five thousand twenty-six (5026) of the Code, 1924, be and the same is hereby amended by adding at the end thereof the following:

"Provided, however, the owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle.

"Approved March 28, A. D., 1927." (Writer's italics.)

As expressed in the title, the purpose of the Act is to *"limit the civil liability of owners."*

At the time of the enactment of the foregoing chapter, there appeared in the Code of 1927 as Section 5028, the following:

*"Careful operation and speed.* Every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed that will not endanger the property of another, or the life or limb of any person."

Section 5029 of the Code of 1927 provided a maximum speed of forty miles an hour, the same having been changed from thirty-five to forty by Chapter 120 of the Acts of the Forty-second General Assembly.

In Riepe v. Elting, 89 Iowa 82, this court had under consideration a violation of a Code provision requiring persons occupying the public highway when meeting to give one-half of the road by turning to the right, and said:

"We conclude that the fact that the son of the plaintiff was on the left of the center of the road when the accident in question occurred was at most only *prima facie* evidence of negligence."

In McElhinney v. Knittle, 199 Iowa 278, this court said (in a case concerning rights on the road):

"Under this rule, the most that a district court is war-

ranted in telling a jury is that a violation of an ordinance or statute is prima-facie evidence of negligence.''

See also Carlson v. Meusberger, 200 Iowa 65; Hubbard v. Bartholomew, 163 Iowa 58; Herdman v. Zwart, 167 Iowa 500; Wagner v. Kloster, 188 Iowa 174; Powell v. Alitz, 191 Iowa 233; Johnson v. Kinnan, 195 Iowa 720.

In Hansen v. Kemmish, 201 Iowa 1008, this court had under consideration Sections 2312 and 2313 of the Code of 1897, requiring the restraining of animals, and said:

''Limiting our holding to the particular question raised in this case, we are of the opinion that the defendant was *prima facie* negligent in permitting his boar to be at large on the highway. * * *.''

See also Smith v. Town of Hudson, 202 Iowa 300; Gould v. Schermer, 101 Iowa 582; Dickeson v. Lzicar, 208 Iowa 275.

In McDougal v. Bormann, 211 Iowa 950, this court said (the case deals with rights on the road) :

''The appellant correctly claims that failure to observe an ordinance or statute is merely prima-facie evidence of negligence.''

See also Pollock v. Hamm, 6 S. W. (2nd Series) 541, (Ark., 1928) ; Fields v. Freeman, 8 S. W. (2nd Series) 436 (Ark., 1928) ; Larkey v. Church, 192 Pac. 569 (Okla., 1920) ; Jacobs v. Jacobs, 74 Southern 992 (La., 1917).

By the terms of Section 5028 quoted above, it was the statutory duty of all operators of cars to drive the same ''in a careful and prudent manner, and at a rate of speed that will not endanger the property of another, or the life or limb of any person.''

Prior to the enactment of said Chapter 119 of the Acts of the Forty-second General Assembly, the operator of an automobile was liable to a guest for the operator's negligence, which resulted in damages to the guest. In other words, if the operator failed to exercise ordinary care, that is to say, was guilty of negligence and damages resulted to the guest, then the operator was liable, unless precluded by the contributory negligence of the claimant. Said Chapter 119 manifestly was passed for the

purpose of relieving the operator of a car from the results of his negligence when the same resulted in damages to a guest. The Legislature saw fit, however, while thus relieving the operator from liability to his guest, to place two exceptions in said Chapter 119. The first exception applies to the operator of the car when he is under the influence of intoxicating liquor and the second exception arises when the operator of a car is guilty of "reckless operation."

Unless the word "reckless" in said Chapter 119 means more than negligence, then the statute is inconsistent and nugatory. By no rule or reason can it be inferred that the Legislature of the State of Iowa, in passing said Chapter 119, "marched uphill and then marched down again." To hold that "reckless" means negligent is to charge the Legislature with doing just that and nothing more, so far as said Chapter 119 is concerned. It is equivalent to saying that the Legislature first relieved the operator of his liability for negligence and then, by Exception No. 2 in said chapter, held him liable for negligence.

At the time said Chapter 119 was passed, the operator of a car was liable to the guest for negligence. By Chapter 119, the operator of the car was relieved from liability to a guest for the operator's negligence and was relieved from liability *entirely* except in two cases:

*First.* Operating a car while under the influence of intoxicating liquor.

*Second.* Operating a car in a reckless manner.

If "reckless" means negligent, then said Chapter 119 is of no force and effect, except as to driving while under the influence of intoxicating liquor. Moreover, there is in Iowa no such thing as degrees of negligence. As was said in Hanna v. Central States Electric Co., 210 Iowa 864:

"It is true that this court, in certain decisions hereinafter cited, used the expression 'high degree of care,' but it was ordinary care, nevertheless. *Negligence and care are no longer classified in this state as to 'degrees.'* In the cases cited, the error was not predicated on instructions given. The term 'ordinary or reasonable care' simply means the care that should be used under the circumstances of the case. As said in Graham v. Town of Oxford, 105 Iowa 705: 'In determining what is

ordinary care, there is no absolute test, but it may be considered to be that degree of care which an ordinarily reasonable man would exercise under like circumstances, in view of all the facts existing at the time.' *The degree of care required necessarily varies with the circumstances of each particular case, but it is 'ordinary care.'*"

See also Gould v. Schermer, 101 Iowa 582; Kerns v. Chicago, Milwaukee & St. Paul Railway Co., 94 Iowa 121; Morrison v. Altig, 157 Iowa 265.

As "negligence" is no longer classified in this state, it follows that "reckless operation," as found in said Chapter 119, means something other than and beyond "negligence."

In Redfern v. Redfern, 212 Iowa 454, this court said that the Iowa guest statute took away all liability of the driver to the guest, and specifically made him liable only in two instances—where the accident occurred through reckless operation of the car, or where the driver was intoxicated.

Many various definitions have been given for the word "reckless," both by lexicographers and appellate courts. The cases are not in complete harmony. The definitions vary in some instances by reason of the peculiar circumstances out of which the definitions arose. We will give only a few of the definitions used as illustrative of the varying views.

Webster's New International Dictionary (1929) defines "reckless" as follows: "I. Inattentive to duty; neglectful; indifferent." This definition is marked as *obsolete* and then follows: "II. Rashly negligent; utterly careless or heedless."

Funk & Wagnall's New Standard Dictionary of the English language defines "reckless" as follows: "I. Destitute of heed or concern for consequences; especially, foolishly heedless of danger; headlong, rash, desperate. II. Not caring or noting, neglectful, indifferent."

It will be noted that these authorities each give two definitions of the word. An examination of the authorities discloses there are two conflicting definitions of the word "reckless." Some courts hold that "reckless" means no more than negligent; others hold that it means "wantonness or bordering on willful." Among the latter are the following:

Pickett v. Southern Railway Co., 69 S. C. 445, 48 S. E. 466;

Proctor v. Southern Ry. Co., 61 S. C. 170, 39 S. E. 351; Bailey v. Smith, 132 S. C. 212, 128 S. E. 423; Senning v. Arkansas Valley Interurban Railway Co., 101 Kan. 78, 165 Pac. 863. The court in the latter case quotes with approval from Atchison, T. & S. F. R. Co. v. Baker, 79 Kan. 183, 189, 98 Pac. 804, 807, 21 L. R. A. (N. S.) 427, as follows:

" 'One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that instead of affirmatively wishing to injure another he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does or not.' "

In Pickett v. Southern Railway Co., 48 S. E. 466 (South Carolina), the court said:

"The next question for consideration is whether his honor the circuit judge erred in ruling that the allegations of the complaint were sufficient to entitle the plaintiff to punitive damages. This depends upon the interpretation of the word 'reckless.' In Webster's International Dictionary the word 'reckless' is defined as 'rashly negligent; utterly careless or heedless.' In Proctor v. R. R., 61 S. C. 170, 39 S. E. 351, the court says: 'It is quite true that negligence may be so gross as to amount to recklessness, but when it does it ceases to be mere negligence, and assumes very much the nature of willfulness; so much so that it has been more than once held in this state that a charge of reckless misconduct will justify the jury, if the same be proved, in awarding punitive, vindictive, or exemplary damages, while it never has been held, so far as we are informed, that the jury, under a charge of mere negligence, would be justified in awarding vindictive or exemplary damages. One in charge of so powerful and dangerous a piece of machinery as a locomotive is bound to use care in operating it, so as to avoid, as far as practicable, doing injuries to others; and if he uses such machinery recklessly, and without regard to the rights of

others, his conduct may as well be characterized by the term "willful" as by the term "reckless," for the difference in this regard between recklessness and willfulness is scarcely appreciable.' "

See also Proctor v. Southern Ry. Co., 61 S. C. 170, 39 S. E. 351.

In Pegram v. Seaboard Air Line Ry., 51 S. E. 975 (North Carolina), the court said:

" 'Reckless' is defined to be 'desperately heedless.' Century Dict. To be reckless is to be regardless of consequences. It is more than carelessness. It implies willfulness."

In Chicago, R. I. & P. Ry. Co. v. Lacy, 97 Pac. 1025 (Kan.), the court said:

"It was said in K. P. Ry. Co. v. Whipple, 39 Kan. 531, 542, 18 Pac. 730, 735: 'In popular use and by our decisions "recklessness" and "wantonness" are stronger terms than mere or ordinary negligence.' Again, in the recent case of Missouri Pacific Ry. Co. v. Walters (Kan.), 96 Pac. 346, Mr. Justice Burch, speaking for the court, said: 'Reckless disregard of security, wantonness, or other equivalent of bad faith, and the willful or malicious disposition to injure all involve something else than negligence.' "

In Hull v. Seaboard Air Line Ry., 57 S. E. 28 (S. Car.), the court said:

"Each of the words, 'wantonness,' 'willfulness,' and 'recklessness,' embodies the element of malice, either express or implied, and are in law substantially the equivalent of each other, in so far as they give rise to an action based upon punitive damages. Pickett v. Railroad, 69 S. C. 445, 48 S. E. 466."

In Jones v. Commonwealth (Kentucky), 281 S. W. 164, the court said:

"* * * the words 'reckless' and 'wanton' mean utterly careless, having no regard for consequences or for the safety of others, yet without malice. The words 'carelessly' and 'negligently' mean the absence of ordinary care, and 'ordinary care' means such care as an ordinarily prudent person would exer-

174

cise for his own protection, under circumstances similar to those described in this case.''

In Farmers' Grain & Supply Co. of Minden v. Blanchard, 178 N. W. 257 (Neb.), the court said:

''In Webster's Dictionary 'reckless' is defined as 'rashly negligent; utterly careless or heedless.' The word 'reckless' has been defined by courts many times. The definitions do not always agree, some saying that a reckless act is the equivalent of a willful one, while others say the word does not imply willful, but merely heedless, careless, rash, indifference to consequences. 'Reckless indifference to safety' as used in the statute means more than want of ordinary care. It implies a rash and careless spirit, not necessarily amounting to wantonness, but approximating it in degree, a willingness to take a chance.''

In Gustafson v. Chicago, R. I. & P. Ry. Co., 128 Fed. 85 (Missouri), the court said:

''By the use of the accumulated epithets that this was done 'carelessly, negligently, and recklessly,' the term 'recklessly' thus employed is tantamount to the allegation that it was 'a wanton disregard of all consequences,' and would warrant the jury in awarding punitive damages against the defendant Hanna. Times Publishing Company v. Carlisle, 94 Fed. 773, 36 C. C. A. 475. Such an allegation in the petition, without more, would warrant the court in instructing the jury that the plaintiff, if the allegation be sustained by the evidence would be entitled to exemplary damages as against the defendant Hanna; and this fact, manifest on the face of the petition, presents a separable controversy as to the defendant company under the removal act. Davenport v. Southern Ry. Co., (C. C.) 124 Fed. 983.''

In People v. Orr, (Mich.) 220 N. W. 777, the court said:

''It is common error to think that, because the result of a negligent act is dire, the act itself is wanton. Negligence is negligence, be it much or little. The difference between negligence and willfulness or wantonness is not in degree but in kind. Negligence is characterized chiefly by inadvertence, thoughtlessness, inattention, and the like, while wantonness or reckless-

ness, in effect willfulness, is characterized, as the words imply, by willfulness.''

In Kansas Pacific Ry. Co. v. Whipple, 18 Pac. 730, the court said:

''Recklessness 'is an indifference whether wrong is done or not,—an indifference to the rights of others.'* * *  In popular use and by our decisions, 'recklessness' and 'wantonness' are stronger terms than mere or ordinary negligence, and therefore, if a person recklessly or wantonly injures another, such person may be subject to damages, even if the other party has been guilty of some negligence or is a trespasser.''

In Ellis v. Ashton & St. Anthony Power Co., 238 Pac. 517, the Supreme Court of Idaho said:

'' 'In the Century Dictionary the word ''reckless'' is defined as meaning ''desperately heedless.'' In the New Standard Dictionary, the term is defined as ''destitute of heed or concern for consequences; especially, foolishly heedless of danger; headlong; rash; desperate.'' In Gustafson v. Chicago, R. I. & P. Ry. Co. (C.C.) 128 F. 85, an allegation is made that an engineer ''carelessly, negligently, and recklessly'' disregarded and ran by signals. The court said that the term ''recklessly'' thus employed, was tantamount to an allegation that it was a wanton disregard of all consequences, and would warrant the jury in awarding exemplary damages. In Walsh v. United States, 174 F. 615, 618, 98 C. C. A. 461, the Circuit Court of Appeals for the Seventh Circuit quotes approvingly the language of Judge Archbald in his concurring opinion in Lear v. United States, 147 F. 359, 77 C. C. A. 537, saying: ''A reckless act, moreover, is always regarded as the equivalent of a willful one.'' In Harrington v. Los Angeles Ry. Co., 140 Cal. 514, 74 P. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85, the terms ''recklessly'' and ''wantonly'' were regarded as synonymous. So they were also regarded in Bussey v. Charleston & W. C. Ry., 75 S. C. 116, 55 S. E. 163, and in Crosby v. Seaboard Air Line Ry., 81 S. C. 24, 61 S. E. 1064. In Pegram v. Seaboard Air Line Ry. Co., 139 N. C. 303, 51 S. E. 975, Ann. Cas. 214, it is declared that the word ''reckless'' means more than carelessness—it implies willfulness. In Bailey v. North Carolina R. Co., 149 N. C. 169, 62 S. E. 912,

it is said that the word "recklessly," when used with "wantonly," is the legal equivalent of willful misconduct and intentional wrong. In Kansas Pacific Railway Co. v. Whipple, 39 Kan. 531, 541, 18 P. 730, 735, the court said: "There is a distinction between ordinary negligence and recklessness or wantonness, as defined in our decisions. * * * In popular use and by our decisions 'recklessness' and 'wantonness' are stronger terms than mere or ordinary negligence." This distinction is again stated by the same court in Chicago, R. I. & P. Ry. Co. v. Lacy, 78 Kan. 622, 97 P. 1025.' Heller v. New York, N. H. & H. R. Co. (C. C. A.), 265 F. 192, 17 A. L. R. 823.''

In Harrington v. Los Angeles Railway Company, 140 Calif. 514, 63 L. R. A. 238, the court said:

"Certain instructions of defendant, directing a verdict in its favor if certain facts were found, were modified by adding a proviso of this character, viz: 'Unless you shall also find that the motorman in charge of defendant's car, *after perceiving the dangerous situation then and there existing,* did recklessly *or* wantonly send his car forward. Whether or not such reckless or wanton conduct of the defendant did occur and cause the collision, is a question of fact for you to determine from the evidence, the same as you must determine other facts submitted.' It is urged that these instructions make 'recklessness' the equivalent of 'wantonness,' and that the terms are not synonymous. If one does a thing recklessly, without regard to the rights of another, he comes within the terms of the very definition of 'wanton' cited by learned counsel for defendant, and if one, perceiving the dangerous situation of another, proceeds recklessly without regard thereto, there is little room for the claim that he is not doing a thing 'recklessly without regard to the rights of another.' We can see no distinction between the terms as used in these instructions.''

In Thomas v. Disbrow, 208 Iowa 873, the instruction of the lower court was that "before the jury could find that appellee was guilty of the reckless operation of the car, they must find that she operated the same in a wanton and willful manner, in total disregard of the rights of those who were riding in the car at the time and place in question." This court held the statute

not retroactive and consequently the instruction was not considered or approved.

In Brandsoy v. Bromeland, 225 N. W. (Minn.) 162, the Supreme Court of Minnesota, in passing on the statute before us, said:

"While the expression 'reckless operation' as used in the statute doubtless means something more than the mere failure to exercise the care of a reasonably prudent person, we think it cannot be construed as meaning only willful or intentional acts. We think it was the legislative intention to include conduct evincing an indifference to or heedless disregard of obvious duty and of probable consequences and dangers. * * * The word is one in common use, and we doubt whether the definitions will convey to a jury any clearer or more definite meaning than the word itself. The dispute at the trial was whether it meant only a willful and intentional disregard of an obvious duty, as claimed by defendant, or whether it was broad enough to include a heedless disregard of obvious danger as claimed by plaintiffs."

As set out in Silver v. Silver (Conn.), 143 Atl. 240 (1928), the material portion of the Connecticut statute, which is quite similar to the one at bar, is " 'unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others.' " The Supreme Court of Connecticut, after stating that prior to the enactment of the so-called "guest statute" the owner or operator of a motor vehicle was liable to the guest for damages resulting from negligence, said:

"We must assume that the Legislature was familiar with the decisions of this court permitting a recovery by a guest in an automobile for injuries resulting from the negligence of the owner or operator, and that, when it undertook to legislate upon that subject, it was with the purpose of making some change in the existing law. * * * The statute imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he is required at common law to exercise toward a passenger who pays for his transportation. Such a distinction between the duty imposed in the case of the gratuitous perform-

ance of services and the performance of them for hire is to be found running through many fields of the law, as for example between the gratuitous bailee and the bailee for hire, the common carrier and the private driver, the innkeeper and the ordinary social host. In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. Massaletti v. Fitzroy, 228 Mass. 487, 118 N. E. 168. *There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay, and the reason for a distinction between the measure of liability in the case of a gratuitous bailment and gratuitous transportation is not obvious. * * *''*

After reciting the facts, the court said:

''We do not think it could reasonably be said that the defendant's conduct, though perhaps negligent, was such as to indicate such a heedless or reckless disregard of the rights of others as to justify a verdict in favor of the plaintiff. The court was therefore right in directing a verdict for the defendant.''

The constitutional question in this case was passed upon by the Supreme Court of the United States and approved. See Silver v. Silver, (U. S.) 74 L. Ed. 221.

In Ascher v. Friedman (Conn.), 147 Atl. 263 (1929), the court gives a statement of the facts as follows:

''From the evidence offered upon the trial the jury might have reached the following conclusions: The plaintiff was a guest in a car driven by her sister. They had taken their families, including two children of the plaintiff and three of her sister's children, for a picnic. While they were having their picnic lunch, it suddenly grew dark and threatened a thunderstorm. The driver of the car was extremely nervous in a thunderstorm. They hastily put everything in the car and started for home. As they were approaching the house, they were proceeding at a rate of 25 to 30 miles an hour, and the plaintiff protested that they were going too fast, but the driver paid no attention. The house was upon the left-hand side of the street

with a driveway into the yard. The driver was proceeding to the left of the center of the street and started to enter the driveway without slackening her speed. The right wheels of the car mounted the curb to the right of the entrance, and in an endeavor to correct her course, the driver swung too far to the left, ploughed through a flower bed, and crashed into a bay window of the house about 25 feet from the curb. The trial court set aside the verdict in favor of the plaintiff on the ground that her case, taken in its most favorable aspect, disclosed nothing more than a case of ordinary negligence on the part of the driver of the car. * * * *No claim of intentional misconduct is made here, but it is contended that the jury might reasonably have found that the plaintiff's injuries were caused by the heedless and reckless disregard of her rights by her sister who was the driver of the car.* The facts, as to which there was no serious dispute, disclose a typical case of negligence, the failure to exercise the care of a reasonably prudent person, for which there can be no recovery in an action by a guest. *Conduct indicating a reckless disregard of the rights of others is quite distinct in its characteristics from merely negligent conduct. It is conduct which indicates an indifference to the consequences of action and constitutes wanton misconduct.* Menzie v. Kalmonowitz, 107 Conn. 187, 199, 139 A. 698; Bordonaro v. Senk, supra. Conduct arising from *momentary thoughtlessness, inadvertence, or from an error of judgment, does not indicate a reckless disregard of the rights of others.* In her haste to get home before the threatened thunderstorm broke, the driver of this car turned from the street into the driveway without slackening her speed, with the result that the car failed to make the turn and mounted the curb. The accident was the result of a momentary bit of careless driving, a failure to exercise due care. There was nothing in the conduct of the defendant to indicate that she was operating the car with reckless disregard of the rights or safety of her own children and of her sister who were riding with her. There was no justification for the verdict of the jury in favor of the plaintiff, and the court performed its clear duty in setting it aside. There is no error. All the Judges concur.''

See also Naudzius v. Lahr, (Mich.) 234 N. W. 581; Bertelli

v. Tronconi, (Mass.) 162 N. E. 307; Bank v. Satran, (Mass.) 165 N. E. 117; McKenna v. Smith, (Mass.) 175 N. E. 474.

In Bank v. Satran, (Mass.) 165 N. E. 117, the court had under consideration an action brought by a guest. It quotes from a statement of the facts, as follows:

"There was evidence that, in rounding a corner, the automobile skidded and brought up against a motor omnibus. A slight snow was falling. There was snow in the highway. The plaintiff and another passenger, one or more times during the ride and before the accident, had suggested to the defendant that he was driving faster than was safe in view of the condition of the roads and the weather. He had thereupon driven more slowly for a time and then increased his speed. Where the accident occurred he was moving at a speed of twenty miles an hour in driving a big, closed car around a corner, swinging into a side street. The vehicle did not overturn, but the plaintiff was, as he says, thrown from it to the street and a rear wheel was broken off as it collided with the omnibus. Such evidence, it is admitted, is abundant to justify a finding that the defendant drove carelessly; but it is contended, that it does not show the striking disregard of the danger of probable injury, the indifference to present legal duty, which is essential to the proof of gross negligence. Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185. The contention is sound."

In McKenna v. Smith, (Mass.) 175 N. E. 474, the court had under consideration a guest case. A motion for a directed verdict was denied. The jury found for the plaintiff. On appeal, the case was reversed. The court said:

"The jury on the evidence was warranted in finding that the plaintiff spoke to the defendant about the speed of the automobile when it turned onto the road at Tyngsborough and a second time when it was making the curve opposite Chapman's barn; that the defendant was not familiar with the roadway from Tyngsborough to the place where the accident happened; that he had never driven over the road before; that he knew it was not as safe a road as the type of road he had been driving over from Nashua to Tyngsborough and was more dangerous, particularly when oiled and wet; that as he proceeded along that

road he found there were many curves, that the road was narrower than the one from Nashua and was somewhat crowned; that he could not see around the curve and did not anticipate any horse and wagon on his side as he approached or on any side. * * * The jury on the evidence reported could properly have found that the defendant was negligent in driving over the part of the road between Hollis street and the place of the accident at a speed of thirty to forty miles an hour, if consideration be given to the facts supported by the evidence that the place where the accident happened was of a particularly dangerous character, even if it were dry and not slippery, by reason of the facts in combination that the road was crowned at the center, was only eighteen to twenty feet in width, that the curves were sharp, and that the view of the defendant beyond the curves was obstructed. The evidence, however, did not warrant the jury in finding gross negligence on the part of the defendant upon the mere fact that he drove the automobile on the road such as it was at the rate of forty miles an hour, from the fact that the plaintiff objected to the rate of speed at which the automobile was driven on Pleasant Street, from the fact that at the time the automobile came around the curve where the accident happened it was going from side to side of the travelled way, from the fact that it skidded and went over on its side when it was turned to the left and the brakes applied to avoid a collision with the on-coming horse and wagon, for the reason that no one of these facts or any combination of them showed a reckless disregard of a plain duty to the public or a heedless and palpable violation of legal duty to the plaintiff. Loftus v. Pelletier, 223 Mass. 63, 111 N. E. 712; Burke v. Cook, 246 Mass. 518, 141 N. E. 585; Marcienowski v. Sanders, 252 Mass. 65, 147 N. E. 275, Bank v. Satran, 266 Mass. 253, 165 N. E. 117; Cook v. Cole, (Mass.) 174 N. E. 271. The case is distinguishable from Rog v. Eltis, 269 Mass. 466, 169 N. E. 413, and Learned v. Hawthorne, (Mass.) 169 N. E. 557.''

See also Harris v. Reid (Ga.), 117 S. E. 256; Banta v. Moresi (La.), 119 Southern 900; Saxe v. Terry (Wash.), 250 Pac. 27; Blood v. Austin (Wash.), 270 Pac. 103; Dailey v. Phoenix Inv. Co. (Wash.), 285 Pac. 657; Browning v. Fidelity Trust Co. (3d Cir.), 250 Fed. 321.

182

We quote all of the foregoing as merely illustrative of the trend of thought on the subject.

In light of the circumstances under which said Chapter 119 was passed, it is apparent, we think that the Legislature intended the word "reckless" therein to mean "proceeding without heed of or concern for consequences." To be "reckless," one must be more than "negligent." Recklessness may include "wilfulness" or "wantonness," but if the conduct is more than negligent, it may be "reckless" without being "wilful" or "wanton," but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies "no care, coupled with disregard for consequences."

This necessarily follows in the statute under consideration from the fact that the primary purpose of the statute is to relieve the host from liability for injury to his guest, resulting from negligence. The statute exempts the host from liability for negligence as ordinarily defined, but holds him liable under two specific exceptions.

As recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading, proof or instruction of the court, in cases brought under this statute.

In the cases brought under this statute, the jury is not to be permitted to determine whether the defendant did what an ordinarily prudent person would not have done under the circumstances, or failed to do what a person of ordinary prudence would have done under the circumstances. To recover, the plaintiff must allege and prove more than that. If the facts are not in conflict, it is for the court to determine whether the defendant has been proven "reckless" in his operation of the automobile. If the facts are in dispute, necessarily they must be submitted to the fact finding body, under definite instructions as to what constitutes "reckless operation."

II. The appellant complains of the instructions of the court given in this case, particularly Instruction No. 4, which reads as follows:

"You are instructed that the statute provides that the owner or operator of an automobile shall not be liable for any

damages to any passenger or person riding in such automobile as a guest, or by invitation and not for hire, unless damage is caused because of the reckless operation by him of such automobile. As it appears without dispute in this case that the plaintiff was riding in defendant's automobile as defendant's guest, without charge, the plaintiff, before he can recover in this action, must prove by a preponderance of the evidence that at the time of the accident, (1) the defendant was driving or operating said car in a reckless manner, and (2) that such recklessness (if proven) directly caused the accident and the claimed injury to plaintiff.

"By 'reckless,' is meant something more than ordinary negligence; it means rash, a heedless disregard of danger or dangers that would be apparent or reasonably anticipated to a person of ordinary prudence and caution under all of the circumstances shown by the evidence. And, in determining whether or not the defendant was driving or operating his automobile recklessly, you may take into consideration his experience and competency in driving and operating automobiles, including the one in question; his familiarity or want thereof with the operating mechanism and devices on the car in question; the facility or want thereof, with which he was able to manipulate such mechanism and devices while driving or operating said car, the speed of the car at the time of the accident, the character and condition of the road on which it was moving, together with all the other circumstances shown by the evidence. And, if under all the circumstances shown, you should believe a preponderance of the evidence shows that the defendant was driving or operating the car at the time of the accident in a reckless manner which directly caused the accident, and the injury to plaintiff, then you should find for the plaintiff."

It is manifest that the foregoing instruction is contradictory and confusing and fails to clearly set out what is meant by "reckless operation," as contained in the statute. The instruction combines an attempt at a definition of "recklessness" with an attempt to define "negligence." The instruction does not with sufficient definiteness and clarity give the jury a legal yardstick by which to measure the defendant's conduct in connection with the statute.

184

It follows the cause must be, and is, Reversed.

FAVILLE, C. J., and EVANS, DE GRAFF, ALBERT, and KINDIG, JJ., concur.

WAGNER, STEVENS, and MORLING, JJ., dissent.

WAGNER, J. (dissenting)—I cannot concur with the majority in reversing the case because of claimed error in the instruction given by the court and quoted in the majority opinion. The instruction says:

"By reckless, is meant something more than ordinary negligence; it means rash, a heedless disregard of danger or dangers that would be apparent or reasonably anticipated to a person of ordinary prudence and caution under all of the circumstances shown by the evidence."

The word "reckless" has a wide range of meaning as can be gleaned from the definitions given by lexicographers and various courts, quotations from which are given in the majority opinion. The appellant and also the majority opinion concedes this to be true. The court told the jury that "reckless" means "rash." This is in accord with the dictionaries. He told the jury that "reckless" means "something more than ordinary negligence." This is in exact accord with the authorities cited and quoted in the majority opinion.

"* * * it is quite true that negligence may be so gross as to amount to recklessness." Proctor v. Southern Ry. Co., (S. C.) 39 S. E. 351.

"In popular use and by our decisions, 'recklessness' and 'wantonness' are stronger terms than mere or ordinary negligence." Kansas Pacific Ry. Co. v. Whipple, (Kansas) 18 Pac. 730.

" 'Reckless indifference to safety' as used in the statute means more than want of ordinary care." Farmers' Grain & Supply Co. of Minden v. Blanchard, (Neb.) 178 N. W. 257.

"While the expression 'reckless operation' as used in the statute doubtless means something more than the mere failure to exercise the care of a reasonably prudent person, we think it cannot be construed as meaning only wilful or intentional acts." Brandsoy v. Bromeland, (Minn.) 225 N. W. 162.

"* * * but it is contended, that it (the evidence) does not show the striking disregard of the danger of probable injury, the indifference to present legal duty, which is essential to the proof of gross negligence." Bank v. Satran, (Mass.) 165 N. E. 117.

Do not the foregoing quotations from the authorities quoted in the majority opinion uphold the definition given by the court when he said that "reckless" means "something more than ordinary negligence?" This same thought creeps into nearly all of the cases relied upon by the majority.

The court in the instruction further told the jury that "reckless" means "a heedless disregard of danger or dangers." This also complies with the authorities quoted in the majority opinion. Again let me quote:

"The words 'reckless' and 'wanton' mean * * * having no regard for consequences or for the safety of others." Jones v. Commonwealth (Ky.), 281 S. W. 164.

The word "reckless" has been defined by courts many times. The definitions do not always agree, some saying that a reckless act is the equivalent of a wilful one, while others say the word does not imply wilful, but merely heedless, careless, rash, indifference to consequences.

" 'Reckless indifference to safety' as used in the statute means more than want of ordinary care." Farmers' Grain & Supply Co. of Minden v. Blanchard, (Neb.) 178 N. W. 257.

"We think it was the legislative intention to include conduct evincing an indifference to or heedless disregard of obvious duty and of probable consequences and dangers." Brandsoy v. Bromeland, (Minn.) 225 N. W. 162.

Even the majority in their opinion state "that the legislature intended the word 'reckless' therein (in the statute) to mean 'proceeding without heed of or concern for consequences.' " It appears to the writer that if there is any distinction to be made between " 'proceeding without heed of or concern for consequences,' as approved by·the majority, and 'a heedless disregard of danger or dangers,' " as given by the trial court, it is one without a difference. It is true that the court continued

the instruction by saying, " 'dangers that would be apparent or reasonably anticipated by a person of ordinary prudence and caution under all of the circumstances shown by the evidence,' " but there is no merit in the complaint made as against this portion of the instruction. See Norris v. Greenville S. & A. Ry. Co., (S. C.) 97 S. E. 848; Geddings v. Atlantic Coast Line Ry. Co., (S. C.) 75 S. E. 284, where the court announces that not only is the conscious invasion of the rights of another in a reckless manner an act of wrong, " 'but that the same result follows, when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say that it was a reckless disregard of another's rights.' "

Also see Brandsoy v. Bromeland, (Minn.) 225 N. W. 162. The law will not permit one in possession of his faculties to shut his eyes or benumb his faculties and in the absence of distracting circumstances fail to see or ascertain danger which is plainly visible or ascertainable, and then to successfully assert that the danger was not apparent or obvious. See Menzie v. Kalmonowitz, (Conn.) 139 Atl. 698. It is thus apparent that the definition as given by the trial court is in accord with the meaning as given by the lexicographers and as construed by various courts and is not out of harmony with the definition approved by the majority, to wit: "proceeding without heed of or concern for consequences." The instruction given is abstractly correct. The appellant made no request for amplification of the instruction and it is the universal holding of this court that a correct instruction, although not as explicit as counsel would like to have it, is sufficient in the absence of a request for amplification. See Ann. to Code of Iowa, pp. 1436 and 1437; Sergeant v. Challis, 213 Iowa 57; and cases therein cited. The trial court should not be reversed for giving a correct instruction even if it might have been properly amplified upon a request therefor by the appellant.

The majority assert: "To be reckless in contemplation of the statute under consideration, one must be more than negligent." It is my belief that recklessness within the meaning of the statute means something more than mere or ordinary negligence, but to say that to be reckless within the meaning of the statute "one must be more than negligent," howsoever gross the

negligence may be,—and the majority do not limit the term,—seems to me to be absurd. ''Reckless'' does not mean intentional. This is illustrated by our involuntary manslaughter cases, where the crime was committed by reason of reckless conduct amounting to criminal negligence, and wherein negligence or recklessness is held to supply the element of intent. See State v. Biewen, 169 Iowa 256; State v. Moore, 129 Iowa 514. In the latter case we said:

''Express intent is not a necessary element in the crime of manslaughter. `Negligence and reckless indifference to the lives and safety of others will supply the intent for the purposes of the criminal law.''

An intentional act is wilful. Without the statute herein involved, the defendant was liable for a wrongful act intentionally and wilfully done. Had it been the intention of the legislature to limit recovery to wrongful acts intentionally and wilfully done, it would have so expressed it. While, as expressed in the many authorities cited in the majority opinion, recklessness is a stronger term than mere or ordinary negligence, in the opinion of the writer of this dissenting opinion, recklessness necessarily includes negligence. A reckless act is necessarily a negligent act, but a negligent act may or may not be reckless.

It is true that in negligence cases we have held that with reference to the degree of care required, the court in instructing the jury should not use the terms ''slight,'' ''ordinary'' or ''gross'' negligence; for the degree of care required (ordinary care) is proportionate to the apparent danger involved; and in that sense we have said that the classification of negligence as slight, ordinary or gross, is improper. But if negligence without the present statute under consideration may be such as to constitute an element of involuntary manslaughter, as held in our cases hereinbefore cited (also see 45 C. J. 1370 et seq.), then negligence may be and is an element of recklessness under the statute now under consideration. The majority have placed a construction upon the term ''reckless operation'' or ''recklessness,'' in a suit where only civil rights are involved, which is far more stringent that we have already applied to the use of the term in criminal cases. See State v. Moore, 129 Iowa 514; State v. Biewen, 169 Iowa 256. If negligence is or may be an

188

element in involuntary manslaughter, how can it be held in a civil case, as asserted by the majority, that "to be reckless in contemplation of the statute under consideration, one must be more than negligent?" That recklessness necessarily includes negligence seems to me too plain to require further discussion or argument. As I view it, there is nothing fundamentally wrong with the instruction upon which the majority reverse, and the defendant did not ask for amplification of the instruction.

The majority assert: "If the facts are not in conflict, it is for the court to determine whether the defendant has been proven 'reckless' in his operation of the automobile." Ordinarily, where the evidence upon a proposition of fact is not in dispute, the question is one of law for the court, but not always so. The rule in regard to the submission to the jury of the question whether the conduct of defendant constitutes recklessness, is the same as applies to the determination of any other question of fact involved in the case. The rule is that if reasonable minds, having before them all of the evidence upon the question, could reach but one conclusion, the question then becomes one of law for the court. But if, under the proven or admitted facts, different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury. See Sergeant v. Challis, 213 Iowa 57, and cases therein cited.

I would affirm.

STEVENS and MORLING, JJ., join in this dissent.